[Civ. No. 6079. Fourth Dist. Mar. 16, 1961.]

COLUMBIA SOUTHERN CHEMICAL CORPORATION (a Corporation), Respondent, v. MANUFACTURERS AND WHOLESALERS INDEMNITY EXCHANGE (a Reciprocal Exchange), Appellant.

196

Hunter & Liljestrom and Gerald V. Barron for Appellant.

Mack, Bianco, King & Eyherabide, R. S. Cooney and H. C. Mack, Jr., for Respondent.

SHEPARD, J.—This is an appeal by defendant from a judgment against it in favor of plaintiff in the amount of $23,177.22 on account of its alleged liability under a public liability insurance policy.

The facts shown by the record are, in general substance, as follows: Columbia Southern Chemical Corporation, plaintiff and respondent herein, operates a soda ash manufacturing plant to which buyers send trucks to obtain the product. Re-

spondent was insured against public liability by Indemnity Insurance Company of North America (hereinafter referred to as "North"), with a $25,000-deductible clause. T. Gai Warehouse Company (hereinafter called "Gai") operated certain trucks and was insured against public liability by Manufacturers and Wholesalers Indemnity Exchange, a reciprocal exchange, defendant and appellant herein. Leslie Goddard was the driver of one of Gai's trucks, which he drove to respondent's plant to pick up a load of soda ash, on March 29, 1956. The loading operation was conducted by driving the truck to respondent's delivery machinery, there parking it, and receiving the ash into the body of the truck through a flexible spout maintained by respondent. The operative procedure of loading involved control by an employee of respondent of a conveyor belt by which the ash was deposited through the flexible spout. The truck operator directed the spout into that portion of the truck unfilled, the spout being so constructed that it could be moved from one hatch of the truck to another as the respective compartments were filled. The entire proceeding was on the premises and apparently under the general directive control of respondent. Respondent had a rope attached to the flexible loading spout for convenience in moving the spout from one hatch to another and to lift the spout out of the hatch after the loading was completed.

Goddard, in accordance with loading practice followed on many previous trips, drove to the spout, parked, and received the load of ash. An employee of respondent controlled delivery of the ash through the spout. When he had received all the ash his truck would hold, Goddard attempted to use the rope to lift the loading spout out of the hatch. The rope was so worn and frayed that it unexpectedly broke. Goddard fell backward from the truck and thereby received very serious injuries. He brought an action against respondent for damages on account of these injuries, and alleged that respondent was negligent in the maintenance of the defective rope and that the injuries were the proximate result of such negligence. He asked for damages in the amount of $150,000. Respondent transmitted the summons and complaint to appellant, claiming coverage as an insured under the public liability policy issued by appellant on Gai's trucks. This claim was predicated on the fact that the injury had been allegedly caused in the process of loading, and on the coverage clauses contained in

appellant's policy. These clauses, insofar as here pertinent, provide as follows:

"I. Coverage A—Bodily Injury Liability. To pay on behalf of the Insured all sums which the Insured shall become obligated to pay by reason of the liability imposed upon him by law, or assumed by him under contract as defined herein, for damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or persons.

"II. Defense, Settlement, Supplementary Payments. As respects the insurance afforded by the other terms of this policy the company shall: (a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; . . .

"(c) pay all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid, tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon; . . .

"III. Definition of Insured. The unqualified word 'insured' includes the named insured and also includes . . . (2) any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured, or with his permission, . . .

"Special Conditions Applicable Only to Part I. (e) Use. Use of an automobile includes the loading and unloading thereof."

Appellant refused to defend on the ground that the complaint did not show any facts requiring it, under the terms of the policy, to defend respondent. North, because there was a potential liability in excess of its $25,000-deductible clause and also because its policy provided for defense regardless of the amount claimed, was forced to defend, and employed counsel therefor, with an ultimate cost to it for attorney's fees and costs in the amount of $2,177.22. In the course of that suit a settlement was negotiated with Goddard and paid by respondent in the amount of $21,000.

Respondent then brought this action against appellant, claiming the right to reimbursement as an insured under the policy issued to Gai, a portion of which is above quoted, and alleging, in general substance, the basic facts above outlined. Appellant herein answered and admitted most of the general facts hereinbefore related, but set up as a defense *in haec verba* the provisions of the policy and the complaint for damages by Goddard against respondent herein. Appellant claims that the face of Goddard's complaint against respondent did not disclose any liability which appellant herein was required to defend under the terms of the policy.

The pertinent portions of the Goddard complaint which we must here consider for purposes of determining whether or not there was any initial showing of potential liability which appellant was required to defend, are as follows: Paragraphs I, II, III and IV relate to respondent's corporate existence and fictitiously named defendants, respondent's employees acting in the scope of employment, and respondent's maintenance and operation of the soda ash manufacturing. Paragraphs V and VI read as follows:

"V That the plaintiff, LESLIE CHAPMAN GODDARD, at all of the times herein mentioned, was employed as a truck driver for one T. GAI; that on or about March 29, 1956, and pursuant to the instructions of his employer, the plaintiff drove a truck owned by said T. GAI to the premises owned, operated, maintained, and controlled by the defendants COLUMBIA and Does I to V, inclusive, for the purpose of obtaining a load of soda ash in the said truck and to deliver said soda ash to the premises of his employer in Colorado; that at all of the times herein mentioned, the plaintiff LESLIE CHAPMAN GODDARD was upon the premises and was loading his truck with soda ash at the express invitation of said defendants above mentioned and with their knowledge, permission, and consent.

"VI That at said time and place defendants owed to plaintiff the duty to exercise ordinary care to provide him with reasonably safe appliances with which to do his work; that defendants so carelessly and negligently maintained the handle on a spout, which handle consisted of rope, that while plaintiff was in the act of operating said spout by the use of said rope, said rope suddenly broke and plaintiff was caused to be thrown to the ground, proximately receiving the injuries and damages hereinafter set forth."

Paragraphs VII, VIII, IX and X allege the injuries to be the proximate result of respondent's negligence, and describe the injuries and damage.

A second cause of action repleads all of the first cause of action plus setting up paragraph II, which reads as follows:

"II That at said time and place defendants owed to plaintiff the duty to exercise ordinary care to provide plaintiff with a reasonably safe place in which to work; that the defendants so carelessly and negligently maintained the spout and its parts and appurtenances which was then and there being used by plaintiff to convey soda ash to the truck he was loading as to cause plaintiff to be thrown to the ground when the handle on said spout gave way, proximately causing the injuries and damages hereinafter set forth."

The cause was tried and judgment was rendered for respondent, from which this appeal is taken.

DUTY TO DEFEND

Appellant first contends that the duty to defend under the policy must be measured entirely by the policy provisions and the factual allegations of the complaint bringing or failing to bring the cause within the perimeter of the policy coverage. As a general, basic principle, we agree with this contention. (*Lamb* v. *Belt Casualty Co.*, 3 Cal.App.2d 624, 630 [2] [40 P.2d 311]; *Greer-Robbins Co.* v. *Pacific Surety Co.*, 37 Cal.App. 540, 544 [174 P. 110]; *Remmer* v. *Glens Falls Indem. Co.*, 140 Cal.App.2d 84, 90 [4] [295 P.2d 19, 57 A.L.R.2d 1379]; *Ritchie* v. *Anchor Casualty Co.*, 135 Cal.App.2d 245, 250 [1] [286 P.2d 1000]; *Liberty Bldg. Co.* v. *Royal Indem. Co.*, 177 Cal.App.2d 583, 586 [1a] [2 Cal. Rptr. 329].)

However, modern procedure has made for so much greater flexibility or plasticity in pleading that this rule must be applied with extreme care to include all the potentialities of the pleading and the policy coverage, and an insurer who refuses to defend does so at its own peril, for it may well develop that, due to such plasticity of pleading, the events referred to in the complaint were, in fact, covered by the policy. As was said in *Ritchie* v. *Anchor Casualty Co., supra,* at page 251 [3, 4]:

"And when the question later arises under an insurance policy as to what the facts alleged in the complaint do spell,— for instance, whether they aver an accident,—the complaint

must be taken by its four corners and the facts arrayed in a complete pattern without regard to niceties of pleading or differentiation between different counts of a single complaint. And the ultimate question is whether the facts alleged do fairly apprise the insurer that plaintiff is suing the insured upon an occurrence which, if his allegations are true, gives rise to liability of insurer to insured under the terms of the policy.

"It is settled that 'in case of doubt such doubt ought to be resolved in the insured's favor' [citations]. In the Pow-Well case, which depended upon a showing of an accident arising out of a plumber's operations, the court said with reference to a complaint leaving the matter in doubt: 'In such a situation, it would seem to be the duty of the insurer to defend, if there is, potentially, a case under the negligence complaint, within the coverage of the policy. If, under the negligence complaint, a claim could be proved, which the insurer must pay, the duty to defend arises.' "

In *Journal Publishing Co.* v. *General Casualty Co.*, 210 F.2d 202, 209 [5], the court comments:

"We hold therefore that even although it may be considered that the pertinent complaint stated a case necessarily outside of the policy coverage, and that in consequence when this complaint was handed to General it owed no duty to defend, yet we think that a policy of this kind will not stand a construction which would permit General to escape its obligation under paragraph I merely because of an allegation of employment made by a third party claimant for whose acts and allegations the insured can hardly be held responsible. The contract drawn and sold by it ought not thus to be construed so strongly in its own favor. One of the outstanding facts of modern litigation is the diminishing importance of initial pleadings in the light of the ease of amendment and the use of pretrial proceedings to lay the pleadings on the shelf."

In *Firco, Inc.* v. *Fireman's Fund Insurance Co.*, 173 Cal. App.2d 524, 527, 528, 529 [343 P.2d 311], the court discusses the same problem in the following language:

"Whether, therefore, when the action against the assured is begun, there will come out of it a judgment which the insurer will have to pay, or whether a defense of the action will show it to have been false, fraudulent, or groundless, so that no judgment can be rendered against the assured are all

matters which may not be determinable when the action is begun. . . .

" 'Whether the insurer ought to defend such an action at least until it appears that the claim is not covered by the policy is not free from doubt; but it seems to us that we should resolve the doubt in favor of the insured.'

"Under our liberal rules of pleading it is settled that if the facts alleged in a complaint entitle the plaintiff to any relief such relief will be accorded notwithstanding it may appear from the pleading or during the course of the action that the plaintiff cannot receive relief under his theory of the action."

It has long been the rule that in construing an insurance policy, any uncertainty or ambiguity in the policy issued by an insurer must be construed most strongly against such insurer and in favor of the insured. (*Goorberg* v. *Western Assurance Co.,* 150 Cal. 510, 515 [89 P. 130, 119 Am.St.Rep. 246, 11 Ann.Cas. 801, 10 L.R.A. N.S. 876]; *Fageol T. & C. Co.* v. *Pacific Indemnity Co.,* 18 Cal.2d 731, 747 [17] [117 P.2d 661]; *Continental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal.2d 423, 437 [12] [296 P.2d 801, 57 A.L.R.2d 914] and cases there cited.) This same rule of construction has many times been applied in favor of a third party using the insured vehicle with the consent of the named assured. (*Island* v. *Fireman's Fund Indem. Co.,* 30 Cal.2d 541, 548 [5-6] [184 P.2d 153, 173 A.L.R. 896]; *Sly* v. *American Indem. Co.,* 127 Cal.App. 202, 207 [2] [15 P.2d 522]; *Pleasant Valley etc. Assn.* v. *Cal-Farms Ins. Co.,* 142 Cal.App.2d 126, 132 [1-3] [289 P.2d 109]; *City of Santa Monica* v. *Royal Indem. Co.,* 157 Cal. App.2d 50, 54 [1-10] [320 P.2d 136].)

"USING," "LOADING AND UNLOADING"

The term "using," when used in a policy without restrictive terms, must be understood in its most comprehensive sense. It does not require that the injury be the direct and proximate result in any strict legal sense of the active movement of the motor vehicle covered by the policy. The term "loading and unloading" must be understood as expanding the coverage intended by the word "use" or "using," and is not a term of restriction as used in this policy. The policy with which we are here involved contains no words of limitation pertinent to the matters here under consideration. Again, it is not necessary that the injury be directly and proximately caused, in the strict legal sense, by

the activities of the motor vehicle itself. Obviously, when the motor vehicle is at rest for loading and unloading, there can be little, if any, activity of the motor vehicle proper. Thus, in applying the coverage paid for by the insurance premium, the term "loading and unloading" has been applied to cover many phases of that operation which do not involve direct activity of the vehicle. (*General Accident Fire & Life Ins. Corp.* v. *Hanley Oil Co.,* 321 Mass. 72 [72 N.E.2d 1, 171 A.L.R. 497] [overflow of fuel oil in cellar on delivery]; *American Auto. Ins. Co.* v. *American Fid. & Cas. Co.,* 106 Cal.App.2d 630, 635 [1] [235 P.2d 645] and numerous cases there cited [escape of oil from terminal facilities after delivery from truck]; *Employers etc. Ins. Co.* v. *Pacific Indem. Co.,* 167 Cal.App.2d 369, 375 [2] [334 P.2d 658] [piling dropped from load crane, crane not a part of truck].) ▮▮▮ We are convinced that in construing the term "using" as expanded by the specific provisions of the policy to include "loading and unloading," the respondent was "using" the truck.

### Application of Pleading Criteria

▮▮▮ We think it sufficiently clear in the pleading in the Goddard complaint that Goddard was on premises exclusively controlled by respondent, that respondent's loading facilities were used, and that respondent was potentially involved in the active loading (as did in truth later appear from the evidence). As was remarked in *Ritchie* v. *Anchor Cas. Co., supra,* the complainant suing the insured is interested in his own recovery. He is not interested in the niceties of the insured's policy protection. He will ordinarily draft his complaint as best suits his own recovery. It is not his business to so draft his complaint as to make it clear that it is within insured's policy coverage. It appears to us, however, in the case here at bar, that any reasonably intelligent person can see from the Goddard complaint that the question of respondent's activity, participation in or control over the loading would most probably be an issue in that case. ▮▮▮ As was said in *Comunale* v. *Traders & General Insurance Co.,* 50 Cal.2d 654, 660 [12] [328 P.2d 198]:

"An insurer who denies coverage does so at its own risk, and, although its position may not have been entirely groundless, if the denial is found to be wrongful it is liable for the full amount which will compensate the insured for all the detriment caused by the insurer's breach of the express and implied obligations of the contract."

In the case here at bar, lifting the loading spout out of the hatch was a part of the process of loading, in which respondent actively participated through providing and controlling the ash and equipment that delivered. The furnishing of a defective rope which Goddard was expected to use was as much negligence as though respondent's employee had negligently swung the loading spout and knocked Goddard off. Our concern here is whether or not the negligence causing the injury was an integral part of the loading operation and whether the allegations of the complaint reasonably can be said to convey to appellant notice of such potential claim by plaintiff.

In the state of the record before us, appellant must be held to have refused defense at its own peril. The very thing that an ordinarily reasonable reader can envision in the Goddard complaint, viz., that respondent was actively involved in the loading operation, turned out, in fact, to be true. We think it is clear that there appeared sufficient potential liability under the policy coverage to place appellant on notice.

### SETTLEMENT

Having concluded that, under the pleadings here involved, there was a duty to defend, appellant's refusal was wrongful. If there is a wrongful refusal to defend, the insurer loses his right to control the litigation, and is liable for any reasonable settlement arrived at in good faith thereunder and paid by *insured.* If a settlement is made by the insured, the question of whether or not the facts of the case come within the policy coverage is still open and may be determined on evidence adduced in the trial in which the insured seeks to recover from the insurer. Under such circumstances, the insurer becomes liable for any reasonable settlement made in good faith, and for the *insured's* costs and expenses necessarily incurred in defending. (*Lamb* v. *Belt Cas. Co., supra,* 631 [5]; *Ritchie* v. *Anchor Cas. Co., supra,* 250 [2], 258 [20]; *Walters* v. *American Ins. Co.,* 185 Cal. App.2d 776, 785-786 [7] [8 Cal.Rptr. 665]; *Chrysler Motors* v. *Royal Indemnity Co.,* 76 Cal.App.2d 785, 788 [1] [174 P.2d 318]; *Comunale* v. *Traders & General Ins. Co., supra,* 661 [14].)

### ATTORNEY'S FEES AND COSTS

Appellant complains that it ought not be compelled to pay respondent's costs and attorney's fees because

such costs and attorney's fees were admittedly paid by North, whose policy coverage is conceded by respondent to contain an unequivocal promise by North to defend, regardless of the amount sued for. The fact that North's policy had a $25,000-deductible clause, which forced respondent to pay the $21,000 settlement to Goddard, and the legal results thereof, have already been discussed. If it had also been forced to pay the costs and attorney's fees, we have no doubt respondent would have the right to recover those also. (*Comunale* v. *Traders & General Ins. Co., supra,* 660 [12].) However, it did not do so.

The effect of recognizing the subrogation here claimed would be only to repay North and to reimburse it for having fulfilled its contractual duty. This was an independent duty that existed irrespective of appellant's policy. Subrogation is an equitable doctrine that the law recognizes and applies for the purpose of securing justice between the parties. (*Employers etc. Ins. Co.* v. *Pacific Indem. Co.,* 167 Cal.App.2d 369, 376 [3] [334 P.2d 658].)

 North, in defending, was at all times protecting not only respondent but its own interest in regard to amounts potentially recoverable in excess of the $25,000-deductible clause. It received full value on its own account for the attorney's fees and costs expended. While at first glance there would appear to be some similarity with the rights of contribution which accrue to coinsurers where both have paid indemnity, a closer analysis makes clear that the indemnification clauses and the defense clauses are entirely different. Indemnity merely promises the payment of money. The defense clause promises the rendition of services requiring the insurer to investigate, conduct the defense, and at times to negotiate and make settlements. These are duties each insurer is required to perform without regard to what the other insurer is doing. It, of course, frequently happens that both join together and share expenses, but that is not compulsory. Each is acting with legal independence of the other. Neither is excused to any extent from its full duty to defend regardless of what course is taken by the other, so that the duty to defend is entirely personal to each particular insurer. It has no legal power to divide its obligation with the other, nor to compel contribution from the other. (*Financial Indem. Co.* v. *Colonial Ins. Co.,* 132 Cal.App.2d 207, 210 [2] [281

P.2d 883] ; *United States Fid. & Guar. Co.* v. *Church,* 107 F.Supp. 683, 689 [14] ; *Continental Cas. Co.* v. *Curtis Pub. Co.,* 94 F.2d 710, 712 [4] ; *American Fid. & Cas. Co.* v. *Pennsylvania etc. Ins. Co.,* 280 F.2d 453, 458 [1].)

Points raised under other headings by appellant and respondent are sufficiently covered in the foregoing discussion.

It follows from the foregoing that the judgment is correct insofar as it awards respondent the $21,000 paid by it to Goddard, but is in error as to the $2,177.22 paid by North for attorney's fees and expenses in defense.

The judgment is modified by striking therefrom the amount of $2,177.22, leaving a recovery to respondent in the amount of $21,000. As so modified, it is affirmed. Each party will bear its own costs on appeal.

Griffin, P. J., and Coughlin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 10, 1961.