457 P.2d 304

Stephen MORARI, Appellant,

v.

ATLANTIC MUTUAL FIRE INSURANCE COMPANY, a corporation, Appellee.

No. I CA–CIV 906.

Court of Appeals of Arizona.

July 24, 1969.

Rehearing Denied Sept. 5, 1969.
Review Granted Nov. 4, 1969.

Yankee & Bernstein, by James A. Yankee, Phoenix, for appellant.

Evans & Kunz, by Donald R. Kunz, Phoenix, for appellee.

MOLLOY, Judge.

Appellant, Stephen Morari, sustained a gunshot wound, while he was alighting from a fellow hunter's truck, when a gun "grabbed" by the fellow hunter for removal from the truck accidentally discharged. The question before us is whether the injury is covered by the comprehensive personal liability provisions of a "homeowners" policy issued by the appellee. We hold, consistent with our recent decision in the closely analogous case of Brenner v. Aetna Insurance Company, 8 Ariz.App. 272, 445 P.2d 474 (1968), that coverage exists.

Morari, his brother, and Philip Hallabrin were on a deer-hunting expedition in Northern Arizona. On the day of the accident, they were riding in a pickup truck owned and driven by Hallabrin, looking for a deer for Morari to shoot. If a deer was seen, Hallabrin was either going to "help" shoot it or lend Morari his rifle. The Hallabrin rifle was in the compartment behind the seat of the truck. Hallabrin did not think it was loaded. A deer was spotted, and Hallabrin stopped the truck, got out, and reached for his rifle. As soon as he "grabbed" it, the gun discharged, in-

juring Morari, who was beginning to get out of the car on the passenger's side.

At the time, Hallabrin was the named insured under what is called a "homeowners" policy issued by the appellee, Atlantic Mutual Fire Insurance Company. The policy contains the following pertinent insuring clause:

"HOMEOWNERS POLICY—COMPREHENSIVE PERSONAL LIABILITY

"PROVISIONS APPLICABLE TO SECTION II

"THIS COMPANY AGREES WITH THE NAMED INSURED:

"INSURING AGREEMENTS

"1. COVERAGE E—PERSONAL LIABILITY:

"* * * To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury * * *"

The policy also contains the following exclusionary clause:

"Section II of this Policy Does Not Apply:

"* * * * * *

"(b) under Coverages E and F, to the ownership, maintenance, operation, use, loading or *unloading* of (1) automobiles * * * while away from the premises or the ways immediately adjoining * . *." (Emphasis added.)

Hallabrin was at the same time also the named insured under an automobile liability policy issued by Farmers Insurance Exchange containing the usual insuring clause obligating the insurer to pay for bodily injury "* * * arising out of the ownership, maintenance, or use * * *" of the insured's automobile.

The appellee, Atlantic, commenced this declaratory judgment proceeding against Morari, Hallabrin, and Farmers Insurance Exchange, alleging that the injury was "* * * caused by the attempt of * * Hallabrin, to remove the said rifle from the said truck," and seeking an adjudication that it had no liability under its policy

and no duty to defend a claim by Morari against Hallabrin. The answers filed by Morari and Farmers Insurance Exchange showed that they had reached a settlement prior to commencement of the action and that a release had been executed by Morari in favor of Farmers expressly reserving the right to go against Hallabrin. Atlantic moved for summary judgment. At the argument on the motion, it was stipulated that the matter was to be submitted to the trial judge for decision "* * * on the merits" on the basis of the existing record, which included statements and depositions of the persons involved, and a trial setting was canceled. Thereafter, the trial judge rendered a judgment declaring that appellant's injury was covered by the automobile policy issued by Farmers, but was not covered by the homeowners policy issued by Atlantic. Neither Farmers nor Hallabrin is a party to this appeal.

Judgment was rendered by the trial judge in this case prior to our decision in the *Brenner* case, *supra*. In *Brenner,* the injured person was riding in the backseat of an automobile en route home from a hunting trip when a gun in the hands of a companion discharged. Our decision that there was coverage under a homeowners policy but not under an automobile liability policy was based primarily upon the lack of a causal connection between the injury and "use" of the car: "This injury resulted from the use of a gun, not the use of a car." 8 Ariz.App. 277, 445 P.2d 479. Our Supreme Court initially granted review in *Brenner, see* 445 P.2d 474, but the grant was later vacated as improvident and review was denied. *See* 8 Ariz.App. 272.

The appellee, Atlantic, in this case, has striven mightily in an effort to show that *Brenner* is not controlling. The pertinent policy provisions, however, are in all significant respects identical. The only factual difference is that, in this case, the vehicle was stopped and Hallabrin was in the act of removing his rifle from it. Appellee points to the terms of the exclusionary clause, quoted above, making the policy inapplicable to the "unloading" of auto-

**144**

mobiles, and argues that the judgment in its favor imports a factual finding consistent with its allegation that the injury *was caused by* Hallabrin's "removing" or attempt to "remove" the gun from the truck. The argument is completed by the assertion, or assumption, that such a removal is an "unloading" within the terms of the exclusionary clause.

There is no definition set forth in the policy for the term "unloading." In the absence of definition, words used in an insurance policy will be defined "\* \* \* in the common sense terms of the average layman \* \* \*" Malanga v. Royal Indemnity Company, 101 Ariz. 588, 591, 422 P.2d 704, 707 (1967); Hartford Fire Ins. Co. v. Electrical Dist. No. 4, 9 Ariz.App. 374, 376, 452 P.2d 539, 541 (1969). *See also* Droz v. Paul Revere Life Insurance Co., 1 Ariz.App. 581, 583, 405 P.2d 833, 835 (1965), and Prudential Insurance Company of America v. Barnes, 285 F.2d 299 (9th Cir. 1960) (arising in Arizona).

■ We are not persuaded that the average layman would regard Hallabrin's act of removing the rifle from the truck as an "unloading" of his truck. Dictionary definitions of the verb "unload" include "to take the cargo from" and "to relieve of something burdensome: take a load from." Webster's Third New International Dictionary (1964). In our view, "loading or unloading," as used here, has primary reference to an object, or objects, transported, or to be transported, from one place for delivery at some at least temporarily "final" destination. We think the average layman would find it ponderously inaccurate to speak of a hunter on the hunt as "unloading" his gun from a vehicle for a quick foray into the brush after the prey has been sighted. Appellant cites Laviana v. Shelby Mutual Insurance Company, 224 F. Supp. 563 (D.Vt.1963), and Allstate Insurance Company v. Valdez, 190 F.Supp.

893 (E.D.Mich.1961), to the contrary. In *Laviana,* a car door closed against the injured person while he was unloading his gun (of bullets) before getting back into the car, causing the gun to discharge. The court noted that "The door of the car was instrumental in producing the accident.". 224 F.Supp. at 565. In *Valdez,* only an automobile liability policy was under consideration.[1] We are not convinced that the analysis set forth in these cases should be applied here.

But, even if we assume, *arguendo,* and contrary to the foregoing, that Hallabrin's act was part of an "unloading" of the gun from the truck, there is still no automotive-connected causation within the *Brenner* analysis. Although in *Brenner,* we pointed out that "in one sense, both Brenner and Luzadder were making a 'use' of the vehicle \* \* \*," 8 Ariz.App. at 275, 445 P.2d at 477, we held that the causal *nexus,* rather than the more generally described activity ("use") was controlling. Here, the obvious, overriding cause of the accident in question was having a loaded gun where it was and handling it in the manner that it was handled. Hallabrin did not strike Morari with the gun in the process of removing it; if the gun had not been loaded, this accident would not have occurred. It is plain on the record here that human conduct wholly independent of automotive use was the direct and efficient cause of this injury.

Appellee also notes that, in *Brenner,* we pointed out that the gun was resting in the crook of the discharger's arm; that he pointed it at the injured person in a joking manner; that the gun was not in contact with any part of the vehicle; and that no motion of the vehicle caused it to discharge. 8 Ariz.App. 274, 445 P.2d 476. But such details are essentially merely icing on the *Brenner* cake. *Brenner's* basic holding is premised upon the idea that, if an auto-

---

1. Cases considering the risks included in "loading and unloading" clauses of motor vehicle policies are collected in Annots., at 160 A.L.R. 1259 and 95 A.L.R.2d 1122. In the "summary" portion of the latter annotation, the annotator states that "All the cases agree that a causal relation or connection must exist between an accident or injury and the loading and unloading of a vehicle \* \* \*." 95 A.L.R.2d 1125.

mobile is nothing more than the scene or locus of a causally unrelated injury,[2] a general liability insurer rather than an automotive insurer should bear the loss.

The comprehensive personal liability insuring clause of this policy is a broad one. We noted in *Brenner* that exclusionary clauses are not entitled to the same broad construction as insuring clauses. 8 Ariz. App. at 276–277, 445 P.2d at 478–479. Appellee's position is, in the final analysis, in conflict with the principles of *Brenner*, and we are not disposed to recross the Rubicon.

Reversed with instructions to enter judgment in favor of appellant and against appellee.

HATHAWAY and KRUCKER, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.

2. *Compare* Fidelity and Casualty Company of New York v. Lott, 273 F.2d 500 (5th Cir. 1960), construing only an automobile policy, and holding that coverage existed where a hunter "used" the car as a gunrest while shooting.