468 P.2d 564

Stephen MORARI, Appellant,

v.

ATLANTIC MUTUAL FIRE INSURANCE COMPANY, a corporation, Appellee.

No. 9803–PR.

Supreme Court of Arizona,
In Banc.
April 23, 1970.

Yankee & Bernstein, by James A. Yankee, Phoenix, for appellant.

Evans & Kunz, by Donald R. Kunz, Phoenix, for appellee.

STRUCKMEYER, Vice Chief Justice.

This action was brought by Atlantic Mutual Fire Insurance Company, appellee seeking a declaratory judgment to determine its liability under a policy of insurance which it had issued to one Philip Hallabrin. Farmers Insurance Exchange and Stephen Morari were joined as defendants in the lower court. Judgment was entered in favor of Atlantic Mutual Fire Insurance Company, declaring that its policy did not provide coverage for injuries inflicted by the accidental discharge of a gun and that the Farmers Insurance Exchange policy did provide coverage. Neither Hallabrin nor the Farmers Insurance Exchange has appealed and Stephen Morari has. The

Court of Appeals reversed, 10 Ariz.App. 142, 457 P.2d 304, and we granted review. Opinion of the Court of Appeals vacated.

In 1966 Philip Hallabrin was the owner of a pickup truck and camper. He went deer hunting with two friends, Stephen and John Morari. On the morning of October 18th, as they were driving down a forest road, a deer was seen. Hallabrin, the driver, stopped the pickup, stepped outside and, with his feet on the ground, reached behind the seat to get his gun. He testified:

"I don't recall just where I grabbed the the gun, but just the moment I got hold of it the gun went off."

Stephen Morari was shot in the leg and subsequently amputation was required. He brought an action in negligence against Hallabrin.

Hallabrin had two policies of insurance, one with Farmers Insurance Exchange, whose policy is the standard vehicle liability insurance policy, and a second, with Atlantic, whose policy is a comprehensive personal liability policy commonly referred to as a "homeowner's policy." The purpose of the present action by Atlantic is to determine its liability on its comprehensive policy under the foregoing facts.

The Farmers policy provided liability insurance for bodily injury "which the insured becomes legally obligated to pay" because of the "operation" and "use" of the Hallabrin vehicle. The word "use" in the policy is defined as including "the loading and unloading thereof." "Loading and unloading" are well understood English words meaning, respectively, "to place cargo in" and "to take cargo from." See Webster's Third New International Dictionary. It has been repeatedly held, as the California court said in Columbia Southern Chemical Corp. v. Manufacturers and Wholesalers Indemnity Exchange, 190 Cal.App.2d 194, 11 Cal.Rptr. 762, 767:

"The term 'loading and unloading' must be understood as expanding the coverage intended by the word 'use' or 'using', and is not a term of restriction * * *."

General Accident Fire and Life Assurance Corp. v. Brown, 35 Ill.App.2d 43, 181 N.E. 2d 191 (1962); Maryland Casualty Co. v. New Jersey Manufacturers (Casualty) Insurance Co., 48 N.J.Super. 314, 137 A.2d 577 (1958) affirmed 28 N.J. 17, 145 A.2d 15.

Various courts have found liability under the "loading and unloading" clause in such circumstances as these: In Raffel v. Travelers Indemnity Co., 141 Conn. 389, 106 A.2d 716 (1954), for injuries suffered by a ten-year-old child where the driver of the insured vehicle unloaded a heavy roll of lineoleum in an upright position and some hours later the roll fell and struck the child. In Connecticut Indemnity Co. v. Lee, 1 Cir., 168 F.2d 420 (applying Massachusetts law) where the driver of the insured vehicle in preparing to unload opened the doors to a sidewalk elevator and a pedestrian fell into the open elevator shaft. In Allstate Insurance Co. v. Valdez, D. C., 190 F.Supp. 893 (1961) (applying Michigan law) the owner of an automobile preparatory to placing a shotgun in the trunk was ejecting shells from its chamber and slipped. The gun discharged, killing one of the owner's companions.

Before proceeding further, several points basic to this appeal should be clarified. First, agreements of insurance such as are here involved are contracts by the insurer to pay for bodily injuries which the insured becomes legally obligated to pay. These are liability contracts and not that of indemnity. See Merchants Mutual Auto Liability Insurance Co. v. Smart, 267 U.S. 126, 45 S.Ct. 320, 69 L.Ed. 538; and see Anno. 41 A.L.R. 507. The insurance is to pay for the negligent acts of the insured committed during the operation or use of the motor vehicle and, of course, included negligent acts committed during loading and unloading. It should be emphasized: Liability arises out of negligent acts in the use of motor vehicles which proximately cause the accident and injuries.

Second, while it is often said that there must be a causal relationship between the accident and the motor vehicle, see 160

A.L.R. 1259, 1272, the word "causal" is not to be confused with proximate causation. Inanimate objects do not cause accidents except possibly in a very loose sense, such as, for example, the unforeseeable failure of machinery. It is the act of the person in control of the object proximately causing the accident which constitutes negligence. More properly it should be said as is stated in 7 Am.Jur.2d 397, 398:

"* * * in order for an accident to come within the 'loading and unloading' clause of a policy there must be a *connection* between the accident and the use of the vehicle insured." (Emphasis supplied.)

In the sense that there must be a connection between the accident and the use of the vehicle, courts have said there must be a causal relationship. For example, in Columbia Southern Chemical Corp. v. Manufacturers and Wholesalers Indemnity Exchange, 11 Cal.Rptr. at page 767:

"* * * it is not necessary that the injury be directly and proximately caused, in the strict legal sense, by the activities of the motor vehicle itself. Obviously, when the motor vehicle is at rest for loading and unloading, there can be little, if any, activity of the motor vehicle proper."

This brings us to an examination of Atlantic's policy and the position of appellant Morari. Atlantic's comprehensive liability policy is an agreement to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury * * *." Were this all, obviously Atlantic would be liable if Hallabrin's negligence in the use of his pickup truck proximately caused Morari's injuries. But it is not. There is a specific exclusionary clause in this language:

"* * * this policy does not apply * * to the ownership, maintenance, operation, use, loading or unloading of (1) automobiles * * * while away from the (owner's) premises or the ways immediately adjoining, * * *".

This exclusion of liability in the operation, use, loading or unloading of automobiles while away from the owner's premises if applied literally would seem to resolve Atlantic's liability.

However, Morari advances two arguments; first, the exclusionary clause being a limitation on liability must be narrowly construed and, second, the exclusion has no application to this case because, as he states:

"The insured's negligence was complete and did not involve the pickup truck nor its unloading * * *. The unloading was not a cause * * *."

We accept Morari's premise that exclusionary clauses are narrowly construed against the insurer but reject the attempted application to this case, observing that while rules of construction are applied where there is doubt or ambiguity, plain language requires no construction, Kilpatrick v. Superior Court (Rozar), 105 Ariz. 413, 466 P.2d 18, filed February 27, 1970. The words of the exclusionary clause cannot be deleted from this contract simply because it serves Morari's interest better that way.

Appellant argues that Hallabrin's negligence was in keeping a loaded gun, not on safety, in his truck and that the negligence was complete prior to the unloading and consequently the unloading was not the cause of the accident. We think appellant is shifting the meaning of the word "cause." The unloading does not have to be the cause in the sense of proximate cause of the accident. The accident need only be connected with the unloading. Hallabrin's act in keeping the gun loaded and not on safety created a dangerous condition from which reasonable men might conclude greater care in its subsequent handling was required in order to prevent its accidental discharge. No doubt the rifle could have been removed from the truck with such care that Morari would not have been injured. The careless use in connection with the unloading was the negligent act from which the injury stemmed.

Morari relies on two cases, that of Brenner v. Aetna Insurance Co., 8 Ariz.App. 272, 445 P.2d 474, and Richland Knox Mutual Insurance Co. v. Kallen, 6 Cir., 376 F.2d 360. We think they are distinguishable.

Brenner was a case in which three persons were riding in an automobile. One of the passengers was "toying" with a pistol which he accidentally discharged. The bullet struck Brenner. The Court of Appeals held that the injury did not result from the manner of the operation or use of the vehicle although occurring during its use, saying:

> "From the standpoint of causation, this injury could have occurred in the woods, in a hunting lodge, or in a house." 8 Ariz.App. at 276, 445 P.2d at 478.

We think it is obvious that there was no connection between the toying with the gun, the negligent act, and the use of the motor vehicle. That is not the case here. The rifle was part of the cargo of Hallabrin's truck. The truck was being used for hunting and the transportation of the hunters and their rifles. The carriage of the rifles was part of the use of the truck in hunting.

Appellant argues that carrying a loaded rifle not on safety was the negligent act and that this was over at the time of the unloading. Therefore, the negligence was not related to the unloading. We think, however, that the carriage of the rifle simply created a dangerous condition which imposed a duty to exercise reasonable care commensurate with all the known circumstances to avoid its accidental discharge. It was the manner of removal from the truck which was the negligent act or omission without which the injury could not have occurred, see Brand v. J. H. Rose Trucking Co., 102 Ariz. 201, 427 P.2d 519, and this negligent act was connected with the unloading.

Richland Knox Insurance Co. v. Kallen, supra, is a case where a passenger in an automobile lit a firecracker and attempted to throw it out of the window of the car but the firecracker fell back into the vehicle igniting other firecrackers and causing injury to one Litwin. The Federal Court of Appeals approved the statement of the district judge that: "His [Kallen's] use of the vehicle had no necessary connection with the accident," 376 F.2d at 365.

Neither of the cases relied upon by appellant is a loading-unloading situation. In the instant case the truck-camper was being operated and used in hunting, the very purpose for which such vehicles are designed. The unloading of the gun was connected with the vehicle's use. It was away from the owner's premises and not in the ways immediately adjoining thereto. Atlantic's policy does not cover this incident.

The judgment of the trial court is affirmed.

LOCKWOOD, C. J., and McFARLAND and HAYS, JJ., concur.

UDALL, Justice (dissenting).

I respectfully dissent from the court's opinion, for the reason that I do not consider there to have been a sufficient relation between any actual unloading of the truck and the accident involved.

At the time the gun fired, it was merely lying in the truck. According to Hallabrin it fired the moment he grabbed it, even before he had begun to lift it. The accident could have occurred whether the gun was lying in a tent, on the ground or on a closet shelf. It could have occurred if at the time of the accident Hallabrin had merely intended to move the gun to a different part of the truck rather than remove it from the truck. Under such circumstances no question of "loading or unloading" could be raised. Moreover, had Hallabrin grabbed the gun while he and his friends were traveling in the truck, the "homeowners" policy would afford coverage. Brenner v. Aetna Insurance Co., 8 Ariz.App. 272, 445 P.2d 474 (1968).

In my view the facts in this case are not sufficiently related to the use of the truck to remove the accident from coverage under the "homeowners" policy.

The Supreme Court of California has stated as follows in Entz v. Fidelity & Casualty Company of New York, 64 Cal.2d 379, 50 Cal.Rptr. 190, 412 P.2d 382 (1966):

"The question, however, is not whether the accident occurred during the unloading, but, rather, whether the injury arose out of the use of the vehicle.

"Although the vehicle need not be, in the legal sense, a proximate cause of the injury, the events giving rise to the claim must arise out of, and be related to, its use. 50 Cal.Rptr. at 195, 412 P.2d at 387."

The majority opinion holds that the instant accident is excluded from the coverage of the homeowners' policy because the accident was "connected" with the unloading. The majority opinion quotes 7 Am. Jur.2d 397, 398, which states that there "must be a connection between the accident and the use of the vehicle insured." Yet the preceding sentence, 7 Am.Jur.2d, 397, states as follows:

"An accident is causally connected with the process of loading or unloading only if the loading or unloading was the *efficient or predominating cause of the accident*." [Emphasis supplied]

I am thus unable to agree that a mere connection with unloading of the truck is sufficient to bring this accident within the exclusionary provisions of the homeowners policy. It is true that courts in some "extreme" situations have held that accidents "arose out of loading or unloading" within the inclusionary provisions of automobile policies.[1] However, in several of such cases cited by the majority, the courts so held only after expressly stating that the policy should be liberally interpreted in favor of the insured. Allstate Insurance Co. v. Valdez, 190 F.Supp. 893 (E.D.Mich.

[1.] On the other hand, in General Accident Fire and Life Assurance Corp. v. Brown, 35 Ill.App.2d 43, 181 N.E.2d 191 (1962), also cited by the majority, the court held that an accident did *not* arise out of "loading and unloading" of a truck. There the accident occurred when the injured party, while carrying two lamps to load in a truck, slipped and fell between the loading ramp and the truck. It cannot be said that the standards to be applied in cases such as these are free from uncertainty.

1961); Raffel v. Travelers Indemnity Co., 141 Conn. 389, 106 A.2d 716 (1954); Columbia Southern Chemical Corp. v. Manufacturers and Wholesalers Indemnity Exchange, 190 Cal.App.2d 194, 11 Cal.Rptr. 762. "It has long been the rule that in construing an insurance policy, any uncertainty or ambiguity in the policy issued by an insurer must be construed most strongly against such insurer and in favor of the insured." Columbia Southern Chemical Corp. v. Manufacturers and Wholesalers Indemnity Exchange, supra, 11 Cal.Rptr. at 767. I do not believe that such "extreme cases", holding that coverage existed, are persuasive authority for the court's holding in this case, which denies coverage to the insured.