949 P.2d 521

**ALLSTATE INSURANCE COMPANY, a corporation, Plaintiff–Appellee,**

v.

**Lawrence E. POWERS and Judith A. Powers, husband and wife, Defendants–Appellants.**

**No. 1 CA–CV 96–0510.**

Court of Appeals of Arizona, Division 1, Department D.

June 12, 1997.

Review Denied Jan. 21, 1998.*

---

* Moeller, J., did not participate in the determination of this matter.

Jerry L. Smith, Flagstaff, for Defendants–Appellants.

Mangum, Wall, Stoops & Warden, P.L.L.C. by Daniel J. Stoops, Flagstaff, for Plaintiff–Appellee.

## OPINION

VOSS, Judge.

This appeal arises from a declaratory judgment action in which the trial court granted summary judgment in favor of appellee Allstate Insurance Company (Allstate). Appellants Lawrence E. Powers and Judith A. Powers (Powers) assert that the trial court erred in finding that coverage under the homeowner's policy was excluded by the policy's "loading or unloading" exclusion. Because we conclude that a causal connection exists even when the negligent loading and the injury do not occur simultaneously, we affirm.

## FACTS AND PROCEDURAL HISTORY

On October 10, 1992, Michael Powers (Michael) and his father, appellant Lawrence Powers (Lawrence) went turkey hunting. Michael used a Winchester model 92 rifle, with lever action and a hammer on top.[1] As they prepared to return home, Lawrence sat on the passenger side of the bench seat in Michael's truck. Michael placed his rifle, top side down, inside a "scabbard" located on the driver's side of the truck's cloth seat cover.[2] After Michael removed his hand from the rifle and began to get into the truck, the rifle fired, injuring Lawrence's leg. Michael admitted that the hammer may have become caught on the material and pulled back slightly when he initially placed the rifle in the scabbard, and subsequently may have broken free of the material, causing the rifle to discharge.

---

1. Michael stated in his deposition that the hammer on top is similar to the hammer on a pistol, which is pulled back to cock the rifle, then is released when the trigger is pulled to fire the rifle.

2. The scabbard is described in the record as a "sling" or "compartment" located on the front portion of the cloth seat cover in Michael's truck, between the knees and feet of the driver, which could hold a rifle or other item horizontally at about calf level.

On September 13, 1994, Powers sued Michael and his wife, Rhonda Powers (Rhonda), alleging negligence. Michael and Rhonda asserted that the injuries and damages alleged in the negligence action fell within the scope of coverage provided by their Allstate Deluxe Homeowner's Policy and demanded that Allstate defend and indemnify them. In June 1995, Allstate filed this declaratory judgment action against Powers, Michael, and Rhonda, requesting that the trial court determine whether Lawrence's injuries were covered under the homeowner's policy.[3]

Shortly thereafter, in August 1995, the parties to the negligence action entered into a *Damron*[4] agreement, under which judgment was to be entered against Michael and Rhonda in favor of Powers, and Michael and Rhonda would assign their claim against Allstate to Powers. In exchange, Powers agreed not to execute on any assets belonging to Michael and Rhonda.

In November 1995, Allstate and Powers filed cross-motions for summary judgment in the declaratory judgment action. The trial court found that "Michael Powers had finished 'loading' the weapon and was preparing to get into the vehicle when the weapon discharged...." Nevertheless, the court held that, under our supreme court's decision in *Morari v. Atlantic Mutual Fire Ins. Co.*, 105 Ariz. 537, 468 P.2d 564 (1970), Allstate was not liable under the homeowner's policy for Lawrence's injuries because the injury falls within the policy's exclusion relating to the loading or unloading of a motor vehicle. The court therefore granted Allstate's motion for summary judgment and denied Powers' cross-motion for summary judgment.

Powers timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes Annotated section (A.R.S. § ) 12–2101(B).

## DISCUSSION

The parties do not dispute the material facts; rather, Powers asserts on appeal that the trial court erroneously applied the law to deny coverage under the insurance contract. "On appeal from a summary judgment we determine *de novo* whether ... the trial court erred in its application of the law." *Gonzalez v. Satrustegui*, 178 Ariz. 92, 97, 870 P.2d 1188, 1193 (App.1993); *see also Benevides v. Arizona Property & Cas. Ins. Guar. Fund*, 184 Ariz. 610, 613, 911 P.2d 616, 619 (App.1995) (interpretation of insurance contract is question of law). We view the evidence in the light most favorable to the party opposing the motion. *Gonzalez*, 178 Ariz. at 97, 870 P.2d at 1193.

### I. The "Loading or Unloading" Exclusion

Where homeowner's insurance policies exclude coverage for incidents arising from the ownership, maintenance, use, loading, or unloading of vehicles, Arizona courts have long required a causal relation or connection between the vehicle and the incident for the incident to come within that definition. *See, e.g., Brenner v. Aetna Ins. Co.*, 8 Ariz.App. 272, 277, 445 P.2d 474, 479 (1968); *Morari v. Atlantic Mut. Fire Ins. Co.*, 105 Ariz. 537, 539, 468 P.2d 564, 566 (1970); *American Modern Home Ins. Co. v. Rocha*, 151 Ariz. 595, 597, 729 P.2d 949, 951 (App.1986).

The word "causal" does not mean that the vehicle proximately causes the event giving rise to liability. *Morari*, 105 Ariz. at 539, 468 P.2d at 566. Rather, "causal" implies that the liability arose because the insured negligently used (or loaded, etc.) the vehicle, while using the vehicle for the purposes for which it was designed. For example, in *Morari*, a truck was used for a hunting excursion. When the driver removed a loaded rifle from the truck, the rifle discharged, injuring a passenger. The court found a causal connection sufficient to preclude coverage under the homeowner's policy because the truck was being used for "the very purpose for which such vehicles are designed"

3. The policy provides in pertinent part:
   We do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer.

4. *See Damron v. Sledge*, 105 Ariz. 151, 460 P.2d 997 (1969) (upholding assignment to plaintiffs of insured's claim against insurer for failure to defend liability lawsuit).

and the negligently performed "unloading of the gun was connected with the vehicle's use." *Id.* at 540, 468 P.2d at 567. The *Morari* court concluded that:

> the carriage of the [loaded] rifle ... created a dangerous condition which imposed a duty to exercise reasonable care ... to avoid its accidental discharge. It was the manner of removal from the truck which was the negligent act or omission without which the injury could not have occurred.

*Id.* at 540, 468 P.2d at 567.

*Morari* did not address, however, whether a sufficient causal connection between the vehicle and the injury can still exist if the injury occurs after the negligent loading is complete. We conclude that it can. In interpreting insurance policies, "[t]he terms of the insurance policy should be given a practical and reasonable construction which support the intent of the parties. The court should not attempt to revise the policy to increase the risk or extend liability just to accomplish a so-called good purpose." *Stearns–Roger Corp. v. The Hartford Acc. and Indem. Co.*, 117 Ariz. 162, 165, 571 P.2d 659, 662 (1977) (citation omitted).

■ Accordingly, we do not interpret *Morari* so narrowly to conclude that the causal connection dissipates simply because the participant was not currently engaging in the negligent act when the injury occurred. Drawing such an arbitrary distinction would be counter-intuitive and ignore fundamental principles of interpretation. Rather, we hold that a causal connection can still exist even if the injury does not occur simultaneously with the negligent loading.

■ We have considered the facts of this case in the light most favorable to appellant with these principles in mind, and we find that the trial court properly granted summary judgment. Here, as in *Morari*, Michael had a duty to load the rifle into the vehicle carefully so that it would not discharge. It is undisputed that Michael placed the loaded rifle into the scabbard hammer-side-down, pointed in Lawrence's direction. The rifle discharged shortly thereafter. Although Michael no longer was touching the rifle when it discharged, Lawrence's injury would not have occurred if the rifle were not pointing in his direction—regardless of what "proximately caused" the rifle to discharge. Additionally, Michael stated that the rifle may have discharged because the hammer caught on the fabric of the scabbard, then released. Simply put, if Michael had not negligently loaded the rifle into the vehicle, the accident would not have occurred. This is a sufficient causal connection between the vehicle and the injury to apply the homeowner's policy's automobile exclusionary clause.

## II. The "Use" Exclusion

■ Even if we accept appellants' argument that no causal connection exists because the loading was complete at the time of the injury, we still conclude that because the negligence was causally connected to the use of the vehicle, coverage is precluded. *Compare Morari*, 105 Ariz. at 540, 468 P.2d at 567, *with Brenner*, 8 Ariz.App. at 276, 445 P.2d at 478.

At the time of the injury, the vehicle was being used for the purpose for which it was designed, namely, to transport persons and objects—in this case, hunters and their weapons. Further, the injury was caused by the use of the vehicle to transport weapons. Therefore, this is not a case in which the vehicle was merely the "situs of the accident"; rather, the injury occurred while the insured was using the vehicle for its intended purpose and arose out of that use. *See Benevides*, 184 Ariz. at 613, 911 P.2d at 619. Accordingly, the "use" exclusion applies.

## CONCLUSION

We do not interpret *Morari* to mean that a causal connection exists only when the negligent loading occurs contemporaneously with the injury. Thus, a causal connection still can exist if the injury occurs some time after the negligent act. Here, Michael negligently loaded the rifle into the vehicle, and as a result, the rifle discharged, causing injury. The brief time between Michael's negligent loading and the injury does not obviate the causal connection. Moreover, because the injury occurred while the vehicle was being

**436**

used for its intended purpose, the negligence also falls within the use exclusion.

For the foregoing, we affirm.

RYAN, P.J., and GARBARINO, J., concur.