COMMERCIAL SERVICE CORPORATION OF DELL RAPIDS, Respondent

v.

L. PAULLE-MIDWAY FIXTURE AND SHOW CASE CO., INC. et al., Appellants

(66 N. W.2d 523)

(File No. 9467. Opinion filed October 22, 1954)

**Bielski, Elliott & Lewis,** Sioux Falls, for Defendant and Appellant.

**T. R. Johnson,** Sioux Falls, for Plaintiff and Respondent.

RUDOLPH, J.   The issue first to be decided in this case is presented by the motion by respondent to dismiss the appeal.

The Commercial Service Corporation brought this action against Chris G. Christopulos, L. Paulle-Midway Fixture & Show Case Co., Inc., Dairyland Creamery Company, State of

South Dakota, the United States of America and others. The purpose of the action was to foreclose a chattel mortgage covering certain restaurant equipment which Christopulos had in part purchased from the L. Paulle-Midway Fixture & Show Case Co., under a contract of conditional sale. These same goods were described in the mortgage given by Christopulos to the Dairyland Creamery Company. The State and United States had filed a tax lien against Christopulos. The L. Paulle-Midway Fixture & Show Case Co., not only answered plaintiff's complaint but it served a cross-complaint wherein it sought possession of the property under its contract of conditional sale and asked for judgment that liens held by other parties be decreed inferior to its contract. This cross-complaint was served upon all parties to the action and all the parties took issue therewith. The judgment entered by the trial court determined the priority of the liens of the parties. The court held that the contract of conditional sale of the Fixture Company (with the exception of two items not material) was void against the other parties to this action. The court further determined that the mortgage of the plaintiff, Commercial Service Corporation, was subject to the chattel mortgage held by the Dairyland Creamery Company but that it was superior to any liens claimed by the State or the United States.

The Fixture Company has appealed to this court and the issue raised in this appeal on the merits is whether its conditional sale contract is valid as against the other parties to this action.

Notice of appeal was served on the plaintiff only. No notice was served upon the Dairyland Creamery Company, the State or United States.

■ SDC 33.0703 requires that the notice of appeal be served on "the adverse party". This court has consistently held that under this code section if a reversal or modification of the judgment cannot be accomplished without adversely affecting the interest of a party not served with the notice of appeal failure to make such service is fatal to the entire appeal. Union Bond & Mortgage Co. v. Brown, 64 S.D. 596, 269 N.W. 472; Lucey v. Vilhauer, 64 S.D. 54, 264 N.W. 203; Fergen v. Lonie, 50 S.D. 328, 210 N.W. 102; Sholseth v. In-

dependent School Dist., 56 S.D. 112, 227 N.W. 483; Crouch v. Dakota, W. & M. Ry. Co., 22 S.D. 263, 117 N.W. 145; Sutton v. Consolidated Apex Mining Co., 12 S.D. 576, 82 N.W. 188. The question presented by the motion, therefore, is whether a reversal of the judgment will adversely affect the interests of the other defendants not served with notice of appeal.

■ We consider first the interest of the Dairyland Creamery Co. It appears from the record that this defendant has been paid in full. The trial court decreed that this mortgage was prior to the mortgage held by plaintiff, and it became necessary that plaintiff satisfy this mortgage in order to sell the property. The Creamery Company no longer has any interest in this litigation.

■ The liens of the State and the United States were held to be inferior to those of the plaintiff and the Creamery Company and neither has appealed from this holding. The record discloses that the property was not of sufficient value to satisfy the two liens the trial court determined were superior to the liens of the State and United States. It follows, we believe, that neither the State nor the United States has any interest left in this proceeding.

■ The second ground urged for a dismissal of the appeal is that appellant paid the costs and attorney fees awarded in the action by the trial court. It appears that the property not having sold for enough to satisfy plaintiff's debt including the costs and attorney fees assessed against appellant, that appellant paid these items to avoid the issuance of an execution for their collection. True, execution had not issued, but we believe it apparent that the costs were paid to prevent the issuance. Respondent cites the cases of Anderson v. Carder, 159 Kan. 1, 150 P.2d 754; West v. Broadwell, 124 Or. 654, 265 P. 783, in support of the view that payment of costs savors of acquiescence in the judgment and cuts off the right of appellate review. But a contrary view, which we believe is the sounder and better, is taken by the great majority of courts. Woodward v. State ex rel. Thomssen, 58 Neb. 598, 79 N.W. 164; Kootenai County v. Hope Lumber Co., 13 Idaho 262, 89 P. 1054; Champion v. Plymouth

Congregational Soc., 42 Barb., N.Y., 441; Territory v. Cooper, 11 Okl. 699, 69 P. 813; Hogue v. McAllister, 122 Wash. 347, 210 P. 671; Johnson v. Barton, 78 N.D. 1, 134 N.W. 84; 2 Am.Jur., Appeal and Error, § 221, Page 981; 4 C.J.S., Appeal and Error, § 214d, p. 413.

As stated by the North Dakota court the costs are only an incident of a judgment of the character of the one here involved. The Nebraska court in the above cited case said with reference to the judgment in a mandamus proceeding, "This judgment consists of two parts,—one on the merits, and the other for the costs. The payment and satisfaction of the latter is no bar to error proceeding to obtain the reversal of the order or judgment granting the peremptory writ. The payment of the costs is not an affirmance of the validity of the other portion of the judgment." Certainly the words of the Nebraska court are most applicable to the facts now before us. This appeal was taken long before the costs were paid, the costs were but an incident of the judgment decreeing the foreclosure of the mortgage and it was only after the mortgaged property was sold and when it became apparent that unless these costs were paid that execution would issue that appellant did pay the costs. It would be ignoring realities to hold that by paying these costs appellant acquiesced in that part of the judgment which decreed the foreclosure of respondent's mortgage.

The motion to dismiss the appeal is denied.

As stated above the trial court held that the Fixture Company's contract of conditional sale was void as to the other parties to this proceeding. The basis of this holding was that the contract was not filed as required by SDC 54.-0205.

The contract of conditional sale described the property coming within its terms as, "Fixtures as per plans and specifications, * * * Marked Exhibit 'A' and * * * and made a part thereof." When the contract was filed with the register of deeds Exhibit "A" was not attached and the only description of the property was as set out in the quotation above. The trial court held that this description was not sufficient to validate the contract within the meaning of SDC 54.0205.

■ The note and mortgage upon which this action is based was given originally by Christopulos to F. L. Barnes. Barnes sold and assigned the note and mortgage to plaintiff after it was due. Plaintiff was not, therefore, a holder in due course and was in no better position than Barnes. Beverage Co. v. Villa Marie Co., 69 S.D. 627, 13 N.W.2d 670.

■ Conceding that the trial court correctly ruled that the description of the goods in the contract as filed was insufficient, nevertheless, if Barnes had "notice" of the nature of the sale by appellant to Christopulos the contract of contract of conditional sale is not rendered invalid as to Barnes. SDC 54.0205 specifically provides that its provisions apply only to those who, "without notice" purchase the property. Barnes was a purchaser as that term is defined in SDC 54.0201(2).

We believe the decisive issue in this case is whether Barnes was "without notice" within the meaning of SDC 54.0205. The term notice is not defined in SDC 54.02, but is defined and classified in SDC 65.05, and we are of the view that if a purchaser has such notice as is described in SDC 65.05 that he is not "without notice" under SDC 54.0205. SDC 65.0501 classifies notice as either actual or constructive. Under SDC 65.0504 a person is deemed to have constructive notice of a fact when he has actual notice of circumstances sufficient to put a prudent man upon inquiry as to the particular fact, and omits to make such inquiry with reasonable diligence. This statute and the rule therein announced have been applied to various situations in this state. See Hingtgen v. Thackery, 23 S.D. 329, 121 N.W. 839; Bliss v. Waterbury, 27 S.D. 429, 131 N.W. 731; Abernathy v. Hunt, 40 S.D. 240, 167 N.W. 145; Pfeiffer v. Short, 45 S.D. 119, 186 N.W. 560; Miller & Thompson's Land & Loan Co. v. Meyer, 62 S.D. 411, 253 N.W. 158; Meyer v. Davenport Elevator Company, 12 S.D. 172, 80 N.W. 189; Malmberg v. Peterson, 20 S.D. 587, 108 N.W. 339; Mee v. Carlson, 22 S.D. 365, 117 N.W. 1033, 29 L.R.A.,N.S., 351; Boynton v. Weller, 40 S.D. 51, 166 N.W. 154; Lyle Culvert & Road Equipment Co. v. J. F. Anderson Lumber Co., 46 S.D. 366, 193 N.W. 58.

F. L. Barnes was not present at the trial but it was agreed by all parties that a certain affidavit executed by

Barnes would be received in evidence "with the same force and effect as if stated by Mr. Barnes under oath as a witness." This affidavit so far as here material is as follows:

"I, F. L. Barnes, on oath depose and say that I live in Sioux Falls, South Dakota and that I am the person who made a loan of $8,500.00 to Chris Christopulos on or about July 26, 1952; that to secure such loan I took his promissory note, and he gave me a chattel mortgage on the fixtures and equipment in his place of business known as Chris' Grill, at the corner of Phillips and Eighth Street, in Sioux Falls, South Dakota.

"At the time of making said loan, I had never had any previous business dealings with Christopulos. When making said loan I dealt entirely through Wayne Sutherland and C. J. Delbridge, as my brokers or agents, and I relied entirely on their advice. I was guaranteed, by oral statement, that I would get my money back and that I would not lose it, or any part of it. I was informed by Wayne Sutherland and C. J. Delbridge that Chris owed considerable debts, including a debt, secured by mortgage, to the Dairyland Creamery Company and an indefinite amount to the L. Paulle-Midway Fixtures and Show Case Company, on a conditional sale contract, and that Chris needed the $8,500 to apply on such and other of his indebtedness. I further state that at the time of the making of said loan I was an employee of the Crescent Creamery Company, a corporation, of which said Wayne Sutherland and C. J. Delbridge were stockholders and officers to my best knowledge and belief.

"I also state that said note and mortgage were never paid, in full, by Christopulos to me but that on or about January 18, 1954 I sold and assigned said note and mortgage, through Wayne Sutherland and C. J. Delbridge, to the Commercial Service Corporation of Dell Rapids, South Dakota, and I received the balance of the money then due me."

C. J. Delbridge testified at the trial that he was the attorney for Dairyland Creamery Company and also for Mr. Barnes. It would therefore appear from the affidavit of Mr. Barnes that the real party in interest in this transaction between Barnes and Christopulos was the Dairyland Creamery Company acting through its officers and attorney Delbridge and Sutherland. In this connection it is interesting to note that in the mortgage given the Dairyland Creamery Company by Christopulos on the same property subsequently mortgaged to Barnes it was specifically stated that the property was "subject to sales contract."

But conceding that it was necessary for Barnes and Barnes only to have notice of a fact which would put a prudent man on inquiry, within the meaning of SDC 65.0504, we believe he had such notice when he was told by Delbridge and Sutherland that Christopulos "owed considerable debts, * * * and an indefinite amount to the L. Paulle-Midway Fixture and Show Case.Company, on a conditional sales contract, * * *". Barnes knew that he was getting a mortgage on the fixtures in the Christopulos restaurant. When he was advised that this Fixture and Show Case Company held a conditional contract on property owned by Chirstopulos it would seem that before advancing $8,500 on a mortgage covering fixtures in the Christopulos restaurant he should as a prudent man make inquiry whether these were the fixtures described in the conditional sales contract held by the Fixture and Show Case Company. It appears from the Barnes' affidavit that he relied on the guarantee of Delbridge and Sutherland rather than upon the mortgage as security for the loan. But this fact cannot invalidate as to him the conditional sales contract held by appellant, when he was advised that appellant had a conditional sales contract on property of Christopulos, and upon inquiry it could have readily been ascertained that the property was the same as that described in the mortgage.

The judgment appealed from is reversed.

All the Judges concur.