UNIGARD MUTUAL INSURANCE COM-
PANY, Plaintiff-Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY et al.,
Defendants-Appellees.

No. 72–1117.

United States Court of Appeals,
Tenth Circuit.

Sept. 21, 1972.

George W. Dahnke, of Foliart, Shep-
herd, Mills & Niemeyer, Oklahoma City,
Okl., for plaintiff-appellant.

Calvin W. Hendrickson, of Pierce,
Couch, Hendrickson, Gust & Short, Okla-
homa City, Okl., for defendant-appellee
State Farm Mutual Automobile Ins. Co.

Before BREITENSTEIN, BARRETT
and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

Appellant insurance company filed a
declaratory judgment action in which it
sought a determination that a home
owner's policy which it had issued to
Lawrence Suchy did not afford coverage
for loss arising from the death of one
Donald Wayne Stevens. Suchy's hunt-
ing rifle discharged accidentally and
killed Stevens. Unigard's declaratory
judgment action also sought a determi-
nation that the incident was covered by
two automobile policies issued by State
Farm in one of which Stevens and in
the other Suchy was named as insured.

As is usual in such cases, there was
also litigation in state court involving
the same basic subject matter. In the
state court action Mildred E. Stevens,
who is named as an appellee here, had
commenced an action in the District
Court of Oklahoma County seeking dam-
ages for the wrongful death of her hus-
band against Suchy. This was subse-
quently settled.

The District Court here held that the shooting accident did not arise out of the use of the vehicle. The court further held that the loading and unloading clause of the State Farm policies did not serve to provide coverage because the rifle had been unloaded from the truck, according to the court, prior to its discharge. Based upon its rulings in this regard, the court entered judgments sustaining State Farm's counter-motion for summary judgment and overruling the motion on behalf of Unigard. While this appeal was pending the state court action was settled by Unigard, the latter reserving its rights against State Farm.

Unigard has requested that the appeal be dismissed as to Stevens and Suchy. This motion is granted.

The essential facts surrounding the discharge of the rifle are not disputed. On November 14, 1970, Suchy, Stevens, their sons and Stevens' father-in-law and brother-in-law were hunting deer. They had two pickup camper vehicles, one of which was owned by Stevens. The party had left Oklahoma City on November 13 and had camped out that night. The following morning they unsuccessfully hunted deer in the area near their camp, but during the latter part of the morning they decided to drive some 40 to 50 miles to another site. Suchy had placed his rifle in the rear of Stevens' pickup and he rode with Stevens to the new place. Upon arrival the participants readied their equipment and proceeded to unload it from the vehicles. Suchy went to the rear of Stevens' pickup and had his son, who was inside the camper, hand him his rifle. He proceeded to insert cartridges and then decided to put his coat on, and to do so laid his gun on the tailgate of the pickup. He requested his son to hand him the coat from the interior of the pickup and proceeded to put it on. While doing this he saw the rifle falling from the tailgate and he tried to grab it. As he did so, the rifle struck the ground, discharged, and the bullet struck the deceased, Stevens, who was still in the back portion of the pickup getting his gear for the purpose of resuming hunting.

The home owner's policy of Unigard which is a public liability type of policy has an exclusionary provision which follows:

"Section II of this Policy Does Not Apply:

\*    \*    \*    \*    \*    \*

(b) Under Coverages E and F to the ownership, maintenance, operation, use, loading or unloading of (1) automobiles or midget automobiles while away from the premises or the ways immediately adjoining, except under Coverage E with respect to operations by independent contractors for non-business purposes of an insured not involving automobiles owned or hired by the insured. \*    \*    \* "

State Farm's policy was issued to Donald Stevens as the insured and described the pickup vehicle which was being used by Stevens and Suchy at the time in question. In the coverage provision of this policy, State Farm agreed "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injuries sustained by other persons." It also provided that the term "insured" includes the named insured and any other person while using the owned automobile, provided operation and the actual use of such automobile are with the permission of the named insured and within the scope of such permission.

State Farm's policy on Suchy contained the same provision and also contained a "USE OF NON-OWNED AUTOMOBILES" provision.[1]

---

1. This provides as follows:
   "If the named insured is a person or persons, and if during the policy period such named insured owns a motor vehicle covered by this policy and classified as 'pleasure and business', such insurance as is afforded by this policy with respect to the owned motor vehicle under: (1) Coverages (a) and (b) applies to the use of a non-owned

The general issue presented is whether the trial court erred in its construction of the loading and unloading clauses. The ultimate question, stated in terms of these facts, is whether Suchy's taking custody of the rifle, inserting the cartridges and then placing it on the truck's tailgate served to complete the unloading transaction so as to preclude coverage growing out of the discharge, or, on the other hand, whether the unloading transaction should have been held to have included the placing of the rifle and its falling, together with the effort of Suchy to intercept the fall.

Appellant maintains that the accepted test enunciated by the Supreme Court of Oklahoma is that of "complete operation" which includes the "entire process involved in the movement of the articles from the place where insured's employees find the articles, which are to be moved by truck to the place where the employees of insured turn them over to the party to whom they are to make delivery." This ruling was given by the Supreme Court of Oklahoma in the case of Penley Oil Co. v. Gulf Ins. Co., 414 P.2d 305 (Okl.1966). In that case Penley delivered fuel for use in a motor grader. Penley's employee mistakenly filled the grader with regular gasoline. The tank was partitioned, one side had regular gasoline and the other diesel fuel. Gulf's insurance policy covered accidents arising out of the ownership, maintenance or use, including loading and unloading of the vehicle. In holding that there was coverage, the Oklahoma court adopted the complete operation rule and rejected Gulf's argument that the unloading must proximately result from the use of the truck. The court said the clause comes into play when the act giving rise to the accident arises out of, and is incident to, the unloading. The Oklahoma court very clearly differentiated between the tests in selecting the "complete operation" rule.[2]

■■ We conclude that under Oklahoma law the loading and unloading clause need not be, as the trial court indicated, related to the use of the vehicle. It need only be an incident of the unloading of the vehicle. Where, as here, there was continued activity by the parties looking to the unloading of hunting gear from the vehicle, the temporary placing of the rifle on the tailgate of the camper did not serve to terminate the unloading procedure and did not furnish a basis for holding no coverage.

The argument of State Farm that this act of Suchy itself terminated the unloading as far as the gun was concerned gives to the clause a narrow construc-

---

automobile by: (a) the first person named in the Declarations * * * PROVIDED SUCH USE, OPERATION OR OCCUPANCY IS WITH THE PERMISSION OF THE OWNER OR PERSON IN LAWFUL POSSESSION OF SUCH AUTOMOBILE AND IS WITHIN THE SCOPE OF SUCH PERMISSION."

2. The courts have generally applied two rules or doctrines when considering situations covered by the "loading and unloading" clause. See Raffel v. Travelers Indemnity Co., 141 Conn. 389, 106 A.2d 716; and 160 A.L.R. 1259–1277. One is the "coming to rest" doctrine. This view places a narrow construccion on said clause and does not hold the insurer liable beyond the point where the goods have been taken off the automobile and have actually come to rest, i. e., when the automobile itself is no longer connected with the process of unloading, and when the articles have started on their course to be delivered by other power and forces independent of the automobile.

The other view is the so-called "complete operation" doctrine, which holds that "loading and unloading" includes the entire process involved in the movement of the articles from the place where insured's employees find the articles, which are to be moved by truck to the place where the employees of insured turn them over to the party to whom they are to make delivery.

The parties have not cited, nor have we found, a case that discloses which doctrine this state has adopted or followed. A majority of the states follow the "complete operation" theory and we believe said rule should be adopted by this Court.

414 P.2d at 310.

tion which we consider to be out of harmony with the "complete transaction" construction.

In Continental Casualty Co. v. Fireman's Fund Ins. Co., 403 F.2d 291, 327, 333 (10th Cir. 1968), this court in applying Colorado law adopted the broader, less restrictive viewpoint. In that case Judge Arraj's ruling and reasoning that there need not be a causal relation in the proximate sense that it was between the injury and the use of the vehicle was approved. Judge Arraj held that it was sufficient if there was a "but for" connection between the injury and the unloading of the vehicle.[3]

The cases which have arisen in the context of the loading and unloading clause do not adopt a more restrictive construction. See, e. g., Laviana v. Shelby Mutual Ins. Co., 224 F.Supp. 563 (D. C.Vt.1963); Allstate Ins. Co. v. Valdez, 190 F.Supp. 893 (E.D.Mich.1961); Morari v. Atlantic Mutual Fire Ins. Co., 105 Ariz. 537, 468 P.2d 564 (1971). These cases generally hold that coverage exists even though the firearm has been removed from the vehicle or has not been actually loaded into it.

Thus, in Allstate v. Valdez, *supra,* the insured, Valdez, had completed hunting and was engaged in ejecting shotgun shells some 25 feet from his car. This was preparatory to loading the shotgun in the trunk of his car. He slipped and fell in the process, and in an attempt to control his fall pointed the gun in the direction of the car. The butt struck the ground and the weapon discharged. A passenger in the back seat of the car was killed. The court held that the ejecting of the shells was a preparatory step to loading and that the distance did not place his activities outside the range of preparation.

And in *Laviana,* which was also a hunting accident, the plaintiff was again unloading his rifle preparing to place it in the car. He was standing near the front left door when it swung shut, hitting his hand and causing the gun to fire. A companion sitting in the driver's seat was struck. This was held by the court to be within the coverage provided in the loading and unloading clause. Again, it was reasoned that preparation brought his act within the clause.

In *Morari,* the Arizona Supreme Court ruled that there was coverage under the clause in question where the rifle discharged as it was being removed by the insured from its position in back of the seat of his automobile.

Finally, in Fidelity & Casualty Company of New York v. Lott, 273 F.2d 500 (5th Cir. 1960), the court (per Tuttle, J.) ruled that an injury incurred as a result of a rifle being rested on the roof of the car and being fired was held to be covered. The bullet deflected and struck the deceased. This one approved coverage which is far more extensive than that which we have at bar.

A perusal of the numerous cases collected in 95 A.L.R.2d 1125 convinces us that the activity here questioned was under the appropriate Oklahoma doctrine within the loading and unloading clause of the policy. To in effect draw a line as the outer limit of coverage at the point where the rifle was first laid on the camper tailgate would not be in accord with the applicable Oklahoma law and with reason.

The judgment is reversed, and the cause is remanded with directions to vacate the court's judgment and to enter judgment for the appellant.

---

3. In that case a match was ignited on a filling station premises while gasoline was being pumped into the station tanks. The fumes were sparked by the match.