LYNDOE, Appellant v. AMERICAN STANDARD
INS. CO. OF WISCONSIN, et al., Respondent

(245 N.W.2d 273)

(File No. 11722. Opinion filed August 19, 1976)

**Lynden D. Levitt**, Rapid City, for plaintiff and appellant.

**Franklin J. Wallahan** and **Marvin D. Truhe, Hanley, Wallahan, Huffman & Truhe**, Rapid City, for defendant and respondent, American Standard Ins. Co. of Wisconsin.

DUNN, Chief Justice.

Plaintiff Loren D. Lyndoe appeals from a judgment of the Circuit Court of the Seventh Judicial Circuit denying a declaratory judgment against American Standard Insurance Company of Wisconsin and Hugo Stender. The court ruled that the company was not liable under its automobile liability insurance policy No. 90-010491, issued to defendant Stender, for injuries to plaintiff. We affirm.

Plaintiff was riding in his brother James Lyndoe's pickup in downtown Custer, South Dakota, on November 5, 1972. They spotted Stender, an acquaintance, driving his pickup. The two vehicles were driven off the main street and onto a gravel side street where they were parked parallel to each other. Stender's vehicle was on the right. While Loren Lyndoe, Stender, and one Rick Wheeler, a passenger in the Stender vehicle, chatted briefly about hunting, James Lyndoe removed a saw and a hunting license from the Stender vehicle's box and glove compartment. He then joined the conversation. After a few minutes, the parties returned to their vehicles. The vehicles were stationary, and it is unclear from the record whether the engines were running. Stender attempted to hand a .38 caliber pistol through the driver's window of his vehicle to plaintiff for his inspection. Before plaintiff touched the gun it discharged accidentally, striking plaintiff in the mouth and lodging the bullet in his throat.

On August 28, 1973, Arthur Lyndoe, as guardian ad litem for his son Loren, commenced a personal injury action against Stender. American Standard refused to assume liability for any sums plaintiff might recover as a result of the shooting incident.

On February 19, 1974, plaintiff brought an action for a declaratory judgment against American Standard and Stender to determine whether the automobile liability insurance policy covered the incident. Stender filed a cross claim seeking a declaration of American Standard's liability under the policy for injuries to plaintiff. Following the filing of depositions, interrogatories, and answers to interrogatories, plaintiff moved for summary judgment. Defendant American Standard resisted this, requesting that the matter be decided as a court judgment upon the materials submitted by plaintiff. Briefs were submitted to the court. On January 21, 1975, the court stated its decision in a letter to the parties. The court ruled that the policy did not provide coverage for plaintiff's injuries; that the independent cause, Stender's conduct, did not constitute an "unloading" of the vehicle. A judgment to that effect was filed April 10, 1975.

American Standard moved for dismissal of this appeal upon the grounds that a copy of plaintiff's notice of appeal was not served on Stender, as evidenced by the fact that no certificate of service appeared in the settled record. The rule under which the appeal would be dismissed is found at SDCL 15-26-3 which states:

> "An appeal must be taken by serving on the adverse party and filing with the clerk of the court in which the judgment or order appealed from is entered a notice, in writing, signed by the appellant or his attorney, stating the appeal from the same and whether the appeal is from the whole or a part thereof, and if from a part only, specifying the part appealed from."

The key word appears to be "adverse." This court has indicated that if the party not served did not have an adverse interest to the appealing party, the appeal will not be dismissed. Commercial Service Corp. of Dell Rapids v. L. Paulle-Midway Fixture & Show Case Co., Inc., 1954, 75 S.D. 409, 66 N.W.2d 523; Union Bond & Mortgage Co. v. Brown, 1936, 64 S.D. 596, 269 N.W. 472; Lucey v. Vilhauer, 1935, 64 S.D. 54, 264 N.W. 203.

In Commercial Service Corp., supra, the court stated:

"SDC 33.0703 (now SDCL 15-26-3) requires that the notice of appeal be served on 'the adverse party'. This court has consistently held that under this code section if a reversal or modification of the judgment cannot be accomplished without adversely affecting the interest of a party not served with the notice of appeal failure to make such service is fatal to the entire appeal." 75 S.D. at 411, 66 N.W.2d at 524.

■ This case is unique in that although American Standard and Stender were named as codefendants in the declaratory judgment action, the interests of plaintiff and Stender are closer than those of Stender and American Standard. In his cross claim, Stender alleged that American Standard was liable under its policy for the injuries to plaintiff. This, of course, is the same relief sought by plaintiff in the declaratory judgment action. Stender would be adversely affected by this court dismissing the appeal, but he would not be adversely affected by our considering the appeal. We conclude that Stender is not an adverse party to plaintiff in this suit under SDCL 15-26-3, and the appeal should not be dismissed.[1]

Plaintiff contends that the policy extends coverage to the act of passing the pistol from the Stender vehicle. He points to the following language of the policy:

"The company shall pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:
Coverage A — bodily injury caused by accident and arising out of the ownership, maintenance or use of the automobile.

    *     *     *     *     *     *

'[U]se' of the automobile includes loading and unloading."

---

1. The motion to dismiss the appeal was made at oral argument. The appellant was given time to present further evidence of service on Stender or to make any other showing as to the motion to dismiss. This he failed to do.

■ Courts have interpreted the "loading and unloading" clause as an extension of the "use" clause of an insurance policy. Dairyland Insurance Co. v. Concrete Products Co., 1973, Iowa, 203 N.W.2d 558. To determine what constitutes the "unloading" process, two theories have been developed. These are the "coming to rest" doctrine and the "complete operation" doctrine. Under the former, an "unloading" process is comprised of the removal of goods and their actual coming to rest, and is completed when every connection with the vehicle is terminated. Stammer v. Kitzmiller, 1937, 226 Wis. 348, 276 N.W. 629. In the latter, "unloading" covers the process from the beginning of the movement of the goods until they reach their destination. State v. District Court of Second Judicial District, 1940, 110 Mont. 250, 100 P.2d 932. See: Annotation, 160 A.L.R. 1259, § IV. In the case at bar, the handing of the pistol was undeniably still in process under either theory. There remains the question of whether the "unloading" clause in the present policy should be interpreted broadly enough to encompass the actions of Stender. Some causal connection between the "use" of the vehicle, including any "loading and unloading," and the accident must exist. Dairyland Insurance Co. v. Concrete Products, Co., supra; Ohio Farmers Insurance Company v. Landfried, 1972, D.C.Pa., 348 F.Supp. 486; LaPointe v. Shelby Mutual Insurance Company, 1972, 361 Mass. 558, 281 N.E.2d 253; Maryland Cas. Co. v. N.J. Mfrs. & C., Ins. Co., 1958, 48 N.J.Super. 314, 137 A.2d 577.

Plaintiff relies on several cases in which courts have held that injuries from an accidental discharge of a gun may constitute a "loading" or "unloading" of a vehicle. The authorities cited by plaintiff deal with hunting expeditions in which someone was removing a gun, Allstate Insurance Company v. Truck Ins. Exchange, 1974, 63 Wis.2d 148, 216 N.W.2d 205; Unigard Mut. Ins. Co. v. State Farm Mut. Auto. Ins. Co., 1972, 10 Cir., 466 F.2d 865; Viani v. Aetna Insurance Company, 1972, 95 Idaho 22, 501 P.2d 706; Morari v. Atlantic Mutual Fire Insurance Company, 1970, 105 Ariz. 537, 468 P.2d 564; Dorsey v. Fidelity Union Casualty Co., Tex.Civ.App. 1932, 52 S.W.2d 775; replacing a gun, Travelers Insurance Co. v. Aetna Casualty & Sur. Co., 1973, Tenn., 491 S.W.2d 363; or unloading a gun prior to replacing a gun in a vehicle, Laviana v. Shelby Mutual Insurance Company, 1963, D.C.Vt., 224

F.Supp. 563. In these cases the courts have determined that such actions can be reasonably expected from persons engaged in hunting and that accidents sometimes occur during such activity. They have found the causal connection between the "use" of the vehicle and the accident present, arising out of the "loading and unloading" of the hunting gear. The courts have also relied upon the generally accepted rule that any ambiguities in an insurance contract are to be interpreted in favor of the insured, finding such ambiguity in the "use" and "loading and unloading" terms of the policy.

American Standard presents another line of authority wherein courts have denied coverage under a "use" clause in a policy when a person is injured in a vehicle by someone within the vehicle loading, United States Fidelity & G. Co. v. Western Fire Ins. Co., 1970, Ky., 450 S.W.2d 491; moving, American Liberty Insurance Company v. Soules, 1972, 288 Ala. 163, 258 So.2d 872; or toying with a gun, Raines v. St. Paul Fire & Marine Insurance Company, 1970, 9 N.C. App. 27, 175 S.E.2d 299; Brenner v. Aetna Insurance Company, 1968, 8 Ariz.App. 272, 445 P.2d 474; Mason v. Celina Mutual Insurance Company, 1967, 161 Colo. 442, 423 P.2d 24; and in cases where the vehicle is used as a gunrest, National Farmers Union Property & Cas. Co. v. Gibbons, 1972, D.C. N.D., 338 F.Supp. 430; Norgaard v. Nodak Mutual Insurance Company, 1972, N.D., 201 N.W.2d 871.[2] These courts have held that the injuries were caused by the independent actions of the careless party and did not arise or flow from the use of the vehicle as contemplated by the policy. The vehicle was merely the *situs* of the occurrence and had no causal connection to the accident.

Although none of the foregoing cases contains a similar factual situation to the case at bar, they do aid in interpreting the present policy. Some of the cases involved efforts by a plaintiff to include his injuries within an automobile policy providing coverage under a "use" clause, while others involved an effort by an insurer to exclude injuries from a homeowner's policy because

2. Cf. Fidelity and Casualty Company of New York v. Lott, 1960, 5 Cir., 273 F.2d 500, 502, wherein the court found the use of a vehicle as a gunrest to be " 'incident to and arising out of the use of a motor vehicle' " because the policy contained no words limiting the definition of "use."

of a clause excluding automobile "use." In the latter policy the "use" clause is given a narrow interpretation, while in the former, courts have adopted a broader interpretation. Therefore the broader view of the "use" clause must be adopted in this case.

Here the parties were within the City of Custer and not on a hunting expedition. They were merely discussing past and possible future hunting. The pistol was not to be delivered for the purpose of hunting nor for any use other than an examination by plaintiff followed by a return to Stender. It has been held that under a "loading and unloading" clause, the efficient and predominating cause of the accident must arise from the "use" of the vehicle. Indiana Lumbermens Mut. Ins. Co. v. Statesman Ins. Co., 1973, 260 Ind. 32, 291 N.E.2d 897; Bituminous Casualty Corp. v. Hartford Accident & Indem. Co., 1964, 7 Cir., 330 F.2d 96; Clark v. Travelers Indemnity Company, 1963, 7 Cir., 313 F.2d 160. Stender's actions were a continuation of the conversation between the parties and could well have taken place elsewhere except for the temporary storage of the pistol in the vehicle. His independent act of reaching out the window of the vehicle was the event which discharged the pistol. Only his hand and arm extended outside the vehicle. Plaintiff admitted that he could have reached the pistol from his vehicle which was approximately two feet away. The vehicle was merely the *situs* from which Stender reached in attempting to deliver the pistol to plaintiff. We find this case more analogous to those cases where a gun was passed or moved within a vehicle than to those cases where a person stepped from his vehicle and attempted to remove a gun. We conclude that the policy's provisions cannot be interpreted so broadly as to allow coverage here.

Affirmed.

WINANS and WOLLMAN, JJ., concur.

COLER, J., dissents.

ZASTROW, J., not having been a member of the court at the time this case was orally argued, did not participate.

COLER, Justice (dissenting).

The majority opinion acknowledges that none of the numerous cases cited by the parties "contains a similar factual situation to the case at bar" and with this statement I agree. The majority of the court has also, for the purpose of construction, properly adopted "the broader view of the 'use' clause" in an automobile policy, but in the application of that rule the majority has accomplished the opposite result by narrowly construing the clause. I agree with what was stated by the Wisconsin Court in Allstate Insurance Company v. Truck Insurance Exchange, 1974, 63 Wis.2d 148, 216 N.W.2d 205, wherein that court held that a "loading and unloading" provision in an insurance contract "would have to be considered an extension of the 'use' clause. Such a rationale is necessary lest the 'loading and unloading' be considered to mean nothing."

The majority opinion does not extend, but rather limits, the "loading and unloading" coverage by requiring a causal connection between vehicle use and the loading and unloading being done.

I am convinced that the gun was being unloaded from the vehicle within the meaning of the policy. Neither Stammer v. Kitzmiller, 1937, 226 Wis. 348, 276 N.W. 629, nor State v. District Court of Second Judicial District, 1940, 110 Mont. 250, 100 P.2d 932, is controlling in the instant case for both courts agree that the process of unloading encompasses every act up to the point where the process is complete. Those two courts only disagreed as to when delivery was completed for the purpose of determining other insurers' liability.

On the facts that appear in the record I would reverse the judgment on the basis that "unloading" includes the entire process of removal of anything within the motor vehicle to its destination. It should not matter that the unloading in this case was intended to be to another vehicle rather than a fixed place or destination, and nothing within the policy or plain meaning of the word "unloading" requires an unloading to be permanent as against temporary.