#28911-a-PJD
**2020 S.D. 21**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

SHELBY M. OLSON, MARY JO OLSON
and GARY S. OLSON,                                    Plaintiffs and Appellants,

     v.

JOHN P. SLATTERY, as Personal
Representative of the Estate of Eric
Michael Johnson,                                     Defendant,

     and

PROGRESSIVE NORTHERN INSURANCE
COMPANY a/k/a PROGRESSIVE DRIVE
INSURANCE,                                           Defendant and Appellee.

--------------------------------------------------------------------------------------------------------------

STATE FARM MUTUAL AUTOMOTIVE
INSURANCE COMPANY,                                   Plaintiff and Appellee,

     v.

JOHN P. SLATTERY, as Personal
Representative of the Estate of Eric
Michael Johnson,                                     Defendant,

     and

SHELBY M. OLSON, MARY JO OLSON
and GARY S. OLSON,                                   Defendants and Appellants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
UNION COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE TAMI BERN
Judge

* * * *

CONSIDERED ON BRIEFS
NOVEMBER 4, 2019
OPINION FILED **04/08/20**

JAMES N. DAANE of
Mayne, Hindman, Daane, Parry
   & Wingert
Sioux City, Iowa                                    Attorneys for appellants.


JASON W. SHANKS of
May & Johnson, P.C.
Sioux Falls, South Dakota                           Attorneys for appellee
                                                    Progressive Northern Insurance
                                                    Company.


HILARY L. WILLIAMSON of
Fuller & Williamson, LLP
Sioux Falls, South Dakota                           Attorneys for appellee State
                                                    Farm Mutual Automobile
                                                    Insurance Company.

#28911

DEVANEY, Justice

[¶1.]     In a tragic series of events, Shelby Olson, who was riding in the backseat of her parents' vehicle, was struck by a bullet when the driver of another vehicle fired a handgun at the Olsons' vehicle. This appeal concerns whether coverage exists for Shelby's injuries under the automobile insurance policy issued to Shelby's parents and whether coverage exists under the automobile policy issued to the shooter. In a consolidated declaratory judgment action, the circuit court considered the insurance companies' motions for summary judgment and concluded that coverage did not exist under either policy because the injuries did not arise out of the use of a vehicle and, alternatively, were not caused by an accident. The Olsons appeal. We affirm.

**Factual and Procedural Background**

[¶2.]     On May 10, 2014, Eric Johnson met his wife Melonie in a parking lot in North Sioux City, South Dakota. The meeting turned into an altercation, and Melonie believed Johnson was going to kill her. She flagged down a vehicle, which was being driven by Gary Olson. Melonie told Gary that her husband was going to kill her, and while explaining this, Johnson drove his pickup toward Melonie and tried to run her over. Gary told Melonie to get inside the Olson vehicle. Johnson then drove his pickup next to the Olson vehicle and aimed a gun at Melonie. He pulled the trigger, but the gun did not fire. Gary, an unarmed, off-duty transport deputy with the Union County Sheriff's Office, who by that time had gotten out of his vehicle, positioned himself between Johnson and the vehicle and instructed his wife Mary to drive the Olson vehicle away. Alone with Johnson, Gary showed him

-1-

his badge. This did not deter Johnson. Instead, Johnson pointed a 9-millimeter handgun at Gary and pulled the trigger, but the gun did not fire.

[¶3.] Johnson fled in his pickup and pursued the Olson vehicle, eventually catching up with Mary on Interstate 29. While the two vehicles traveled at high speeds, Johnson fired his handgun at the Olson vehicle at least five times. One bullet entered the vehicle through the trunk and struck the Olsons' daughter Shelby who was sitting in the backseat. Shelby sustained a non-life-threatening injury. Eventually law enforcement stopped Johnson's vehicle at which time Johnson took his own life.

[¶4.] Johnson's vehicle was insured under an automobile liability policy issued by State Farm Mutual Automobile Insurance Company. The Olsons submitted a claim to State Farm seeking recovery for property damage and bodily injury sustained as a result of the incident with Johnson. State Farm denied the claim based on an exclusion within the policy for intentional acts. Thereafter, the Olsons brought suit against the Estate of Johnson and his wife, Melonie, for compensatory damages and against their own automobile insurer, Progressive Northern Insurance Company, pursuant to the policy's underinsured and uninsured motorist coverage provision. Progressive denied that coverage existed and filed a counterclaim seeking a declaratory judgment that it had no obligation to pay underinsured or uninsured benefits to the Olsons. In response to the Olsons' suit against Johnson's estate and Melonie, State Farm tendered a defense but with a reservation of rights. State Farm also filed a separate action for declaratory relief,

requesting that the circuit court determine it owed no duty to defend or indemnify the Johnsons.

[¶5.] The parties agreed to consolidate State Farm's and Progressive's respective declaratory judgment actions and stipulated to the dismissal of Melonie as a party. State Farm and Progressive then filed motions for summary judgment. State Farm argued it had no duty to defend or indemnify the Estate of Johnson as a matter of law because Johnson's acts were not accidental and because the damage and injuries sustained were not the result of an accident involving the use of a vehicle. Progressive similarly asserted that coverage was not implicated under its policy because the Olsons' damage and injuries did not result from an accident and did not arise out of Johnson's ownership, maintenance, or use of an underinsured or uninsured vehicle.

[¶6.] The circuit court considered the motions for summary judgment at a hearing and granted summary judgment to both State Farm and Progressive. The court determined that Johnson's act of shooting Shelby did not arise out of the use of a motor vehicle. Alternatively, the court concluded that Johnson's acts did not constitute an accident for purposes of coverage under either policy. The Olsons appeal, asserting that the circuit court erred in granting summary judgment to State Farm and to Progressive.

### Standard of Review

[¶7.] It is well established that we review a circuit court's grant of summary judgment to determine "whether genuine issues of material fact exist and whether the law was correctly applied." *Swenson v. Auto Owners Ins. Co.*, 2013 S.D. 38, ¶

12, 831 N.W.2d 402, 406. However, because the material facts are not in dispute here, we review only whether the circuit court properly interpreted and applied the policy language to the undisputed facts. *See id.* "The interpretation of an insurance policy is a question of law, reviewed de novo." *Id.* ¶ 13.

## Analysis and Decision

*Summary judgment as to State Farm's liability policy*

[¶8.]        Johnson's automobile insurance policy with State Farm provides in part that:

> 1. **We** will pay:
>     a. damages an **insured** becomes legally liable to pay
>        because of:
>        (1) **bodily injury** to others; and
>        (2) damage to property
> caused by an accident that involves a vehicle for which that
> **insured** is provided Liability Coverage by this policy . . . .

The policy also contains the following exclusion: "THERE IS NO COVERAGE FOR AN INSURED . . . WHO INTENTIONALLY CAUSES BODILY INJURY OR DAMAGE TO PROPERTY."

[¶9.]        The phrase "caused by an accident" is not defined in State Farm's policy. This Court, however, has consistently defined the term "accident" in the insurance context to mean "an undesigned, sudden and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force." *State Farm Mut. Auto. Ins. Co. v. Wertz*, 540 N.W.2d 636, 639 (S.D. 1995) (citation omitted); *Geidel v. De Smet Farm Mutual Insurance Company of South Dakota,* 2019 S.D. 20, ¶ 18, 926 N.W.2d 478, 483. Applying this definition, we have further said that an insured's act is not an accident "when the insured actually

intended to cause the injury that results." *Wertz*, 540 N.W.2d at 639 (quoting *Vermont Mut. Ins. Co. v. Malcolm*, 517 A.2d 800, 802–03 (N.H. 1986)). Moreover, even if the insured did not intend to cause the resulting injury by the intentional act, the insured's act cannot "be an accidental cause of injury when it is so inherently injurious that it cannot be performed without causing the resulting injury." *Id.* An intentional act is considered "so inherently injurious" when "the injury was certain to follow from it[.]" *Id.* at 639–40.

[¶10.] The Olsons concede that Johnson (the insured) intentionally fired his handgun at their vehicle and that he intended to injure Melonie, but they claim such intentional act "is not the determining factor." Rather, in their view, coverage exists because Johnson did not intend to injure *Shelby*; Shelby was injured merely by the happenstance of the Olsons coming upon the scene and acting as Good Samaritans. They further contend that coverage exists because Johnson's act of intentionally firing a handgun at *Melonie* was not "certain" to cause injury to *Shelby*. We disagree.

[¶11.] Contrary to the Olsons' narrow view, Johnson need not harbor the specific intent to injure *Shelby*. It is enough that Johnson acted intentionally to cause injury when he discharged his handgun at the Olson vehicle. As one court explained, "the applicable rule is that an act is inherently injurious if it is certain to result in *some* injury, although not necessarily the particular alleged injury." *Providence Mut. Fire Ins. Co. v. Scanlon*, 638 A.2d 1246, 1249 (N.H. 1994) (cited in *Wertz*, 540 N.W.2d at 640).

[¶12.]     Therefore, even if Johnson did not intend to injure Shelby, his intentional act of firing a handgun multiple times from a moving vehicle, toward another moving vehicle filled with occupants, was so inherently injurious that it was certain to result in some injury.  Moreover, State Farm's policy excludes coverage when an insured intentionally causes bodily injury or property damage.  There is no dispute here that Johnson fired his handgun multiple times at the Olson vehicle with the intent to injure Melonie, and this intentional act caused resulting damage and bodily injury.

[¶13.]     We acknowledge the Olsons' request that we place their status as Good Samaritans over the express language of the automobile insurance policy, and we commend the Olsons for saving Melonie from certain death at the hands of Johnson.  However, it is settled public policy in this State that insurance coverage cannot extend "to an individual who intentionally harms others[,]" even when "the harm is unforeseen by the victim."  *Wertz*, 540 N.W.2d at 640–41.  To conclude otherwise would allow one "to insure himself against economic consequences of his intentional wrongdoing[.]"  *Id.* at 640 (quoting *City of Fort Pierre v. United Fire & Cas. Co.*, 463 N.W.2d 845, 849 (S.D. 1990)).  Because Johnson's intentional act caused the resulting damage and bodily injury, the circuit court properly granted State Farm summary judgment, concluding that State Farm had no duty to defend or indemnify Johnson against the Olsons' lawsuit.

[¶14.]     Nevertheless, even if Shelby's injuries were caused by an accident, the Olsons must further establish that the injuries were "[c]aused by an accident that involves a vehicle for which [the] *insured* is provided Liability Coverage by this

policy." (Emphasis added.) State Farm's policy defines the "insured" as "you and resident relatives for . . . the ownership, maintenance, or *use of . . . your car.*" (Emphasis added.) According to State Farm, Shelby's injuries were caused by Johnson firing a handgun and not Johnson's use of his vehicle. The Olsons respond that Johnson's use of the vehicle to facilitate the continuing assault on Melonie was "an entirely foreseeable and inherent, causally connected and inextricably linked use of that vehicle to then inadvertently injure" Shelby.

[¶15.] In *North Star Mutual Insurance Company v. Peterson*, we examined whether the accidental discharge of a firearm in the backseat of a vehicle used to transport hunters constitutes an "auto accident." 2008 S.D. 36, ¶ 11, 749 N.W.2d 528, 531. The phrase "auto accident" was not defined in the policy; however, this Court concluded that the phrase requires that the accident *arise out of the use of the vehicle. Id.* ¶ 15. In so concluding, we considered South Dakota's law of financial responsibility, *see* SDCL 32-35-70, which mandates liability coverage for accidents arising out of the insured's ownership, maintenance, or use of a vehicle. We also considered that the insurance policy at issue, like the one here, covered accidents arising out of the ownership, maintenance, or use of a motor vehicle by virtue of its definition of an "insured." *Peterson*, 2008 S.D. 36, ¶¶ 6, 12, 749 N.W.2d at 530–32.

[¶16.] Ultimately, the Court adopted a causal connection test that focuses on the foreseeable and inherent use of a vehicle. Under this test, while the "use" clause is to be viewed broadly in the context of automobile insurance, there must be a causal connection between the vehicle's use and the injury-producing event. *Id.* ¶ 15, 749 N.W.2d at 532. Further, the vehicle must be more than the mere situs from

which the accident resulted. *Id.* ¶ 21, 749 N.W.2d at 534; *accord Lyndoe v. Am. Standard Ins. Co.*, 90 S.D. 644, 650, 245 N.W.2d 273, 276 (1976).

[¶17.]     We conclude that the causal connection test similarly applies in this case because State Farm's policy, by virtue of the definition of an insured, incorporates a "use" clause. More specifically, we conclude that the phrase "accident that involves a vehicle" when read in context of the entire coverage provision and the definition of insured, requires that the accident arise out of the insured's use of the vehicle. *See Nat'l Sun Indus., Inc. v. S.D. Farm Bureau Ins. Co.*, 1999 S.D. 63, ¶ 18, 596 N.W.2d 45, 48 (providing that we read the policy provision and terms as a whole).

[¶18.]     Applying the causal connection test here, even if we had concluded that Shelby's injuries were caused by an accident, the vehicle was the mere situs from which the accident resulted. *See Lyndoe*, 90 S.D. at 650, 245 N.W.2d at 276 (concluding that the vehicle was not causally connected to the discharge of the pistol). An insured's firing of a gun out the window of a moving vehicle toward occupants in another moving vehicle does not logically follow from the use of a vehicle for transportation purposes. *See Peterson*, 2008 S.D. 36, ¶ 24, 749 N.W.2d at 536. Rather, Johnson's act of discharging the handgun at the Olson vehicle was independent of his act of using a vehicle. Therefore, the Olsons have not established a causal connection between the use of Johnson's vehicle and the injury-producing event.

*Summary judgment as to Progressive's underinsured and uninsured coverage provision*

[¶19.]     The Olsons contend that summary judgment was improperly granted to Progressive for the same reasons they argue the circuit court erred in granting summary judgment to State Farm.  We, therefore, examine the Olsons' claims relating to the language contained in their policy with Progressive.  The Olsons seek to recover pursuant to their underinsured and uninsured motorist policy provision, which provides in relevant part:

> If **you** pay the premium for this coverage, **we** will pay for damages that an **insured** person is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** or an **underinsured motor vehicle** because of **bodily injury**:
>
> 1. sustained by an **insured person**;
> 2. caused by an accident, and
> 3. *arising out of the ownership, maintenance, or use of an* **uninsured motor vehicle** *or an* **underinsured motor vehicle**.

(Italics added.)

[¶20.]     Consistent with our analysis of coverage under State Farm's policy, to recover under Progressive's policy, the Olsons must establish that bodily injury arose "out of the ownership, maintenance, or use of an uninsured motor vehicle or an underinsured motor vehicle."  They contend that Shelby's injuries arose out of Johnson's use of the vehicle because Johnson used the vehicle to attempt to run over Melonie and continued to use the vehicle to pursue the Olson vehicle.  The Olsons further assert that "the misdirected bullet from a firearm discharged from that vehicle, would be considered foreseeable and inherent, causally connected and inextricably linked to the use of that vehicle[,]" especially considering that they risked "injecting themselves into a dangerous situation . . . to rescue one in need[.]"

[¶21.] The facts in *Farm & City Insurance v. Estate of Davis*, where a shooter used a vehicle to place himself in a position to injure another person, are indistinguishable from the facts in this case. 2001 S.D. 71, ¶ 9, 629 N.W.2d 586, 588. In *Davis*, the insured was not the intended victim; he was a passenger in the vehicle the shooter was pursuing. The estate of the insured sought uninsured motorist benefits, and the insurance company denied the claim because the insured's death did not result from the normal and proper use of a vehicle. We agreed, concluding that the shooter's "use of his vehicle for transportation purposes did not cause [the insured's] death." *Id.* ¶ 14, 629 N.W.2d at 589. Rather, the "illegal discharge of a firearm did." *Id.*

[¶22.] Although the facts in *Davis* were tragic, we aligned ourselves with the majority of courts that have refused "to find that the insurer and insured contemplated that the conduct involved in a drive-by shooting would be covered under the policy." *Id.* ¶ 15. Compelling reasons support upholding this conclusion today. Driving a vehicle and discharging a firearm at persons in another vehicle are acts of independent significance. *Id.* ¶ 14 (The shooter's use of a vehicle to position himself to harm another "ignores his deliberate act of pointing a loaded shotgun out his window and firing it into the passenger window[.]"). Shooting from a vehicle at other persons is not an act inextricably linked to the use of a vehicle. Likewise, the shooter's use of a vehicle to chase down another person to inflict injury is not a normal use of a vehicle for transportation purposes. *See id.* ¶ 16. The circuit court properly granted summary judgment to Progressive on the determination that

Shelby's injuries did not arise out of Johnson's ownership, maintenance, or use of an underinsured or uninsured motor vehicle.

[¶23.]     We affirm.

[¶24.]     GILBERTSON, Chief Justice, and KERN, SALTER, Justices, and KLINGER, Circuit Court Judge, concur.

[¶25.]     KLINGER, Circuit Court Judge, sitting for JENSEN, Justice, disqualified.